# EXHIBIT 2

| | Pagination |
|---|---|
| * | Ill. App. 3d |
| ** | Ill. Dec. |
| *** | N.E.2d |

Majority Opinion > Table of Cases

Appellate Court of Illinois
First District, Third Division

Zoran Corluka, Plaintiff-Appellant,
v.
Bridgford Foods of Illinois, Inc., Defendant-Appellee.

No. 1--95--3116
Affirmed in part and reversed in part; cause remanded.

Opinion filed September 30, 1996
Appeal from the Circuit Court of Cook County; the Hon. Michael J. Hogan, Judge, presiding.**[\*\*648] [\*\*\*816]

Robert S. Minetz and Sarah S. Hirsen, both of Chicago, for appellant.

Michael J. Hayes and Darren S. Cahr, both of Chicago, for appellee.

[\*191] PRESIDING JUSTICE **TULLY** delivered the opinion of the court:

Plaintiff, Zoran Corluka, brought this action in the circuit court of Cook County against defendant, Bridgford Foods of Illinois, Inc. (hereinafter Bridgford), seeking to recover damages for a retaliatory discharge, breach of contract and promissory estoppel after plaintiff's employment was terminated. Defendant filed a motion to dismiss plaintiff's cause of action under *section 2-619* of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1994)) on the basis that the complaint was barred by the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 1994)). The circuit court granted defendant's motion to dismiss. It is from this judgment that plaintiff now appeals to this court pursuant to Supreme Court Rule 301 (*155 Ill. 2d R. 301*).

For the reasons that follow, we affirm in part and reverse in part and remand.

[\*192] The facts pertaining to this appeal are as follows. Corluka was employed by Bridgford for eight years, beginning in July of 1986 to July of 1994. Bridgford had issued a "No Harassment Policy" on April 19, 1994, stating that it "would not tolerate harassment of [its] employees." Bridgford further emphasized, "rest assured that you will not be penalized in any way for reporting harassment concerning yourself or any other person. [Bridgford] will take immediate action to punish anyone who seeks reprisal as a consequence of harassment being reported."

On June of 1994, Corluka reported to Kathleen Mulligan, one of Bridgford's attorneys, that his supervisor, who was unidentified in the record, was committing acts of sexual harassment and other acts of misconduct. Subsequently, Bridgford demoted Corluka from his position as a supervisor, took away his facility keys, and informed him that he was no longer eligible to work overtime. Corluka was discharged on July 15, 1994. Subsequently, Corluka brought this suit, which was dismissed by the circuit court.

On appeal, plaintiff argues that the circuit court erred in dismissing his three-count complaint alleging causes of action for retaliatory discharge, breach of contract and promissory estoppel. Plaintiff submits that his causes of action are not preempted by the Act.

The purpose of a motion to dismiss under *section 2-619* is to dispose of issues of law and easily proved issues of fact



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Corluka v. Bridgford Foods of Illinois, Inc., 284 Ill. App. 3d 190, 219 Ill. Dec. 647, 671 N.E.2d 814, 12 IER Cases 379 (App. 1st Dist.

at the outset of a case. *Zedella v. Gibson*, 165 Ill. 2d 181, 185, 650 N.E.2d 1000 (1995). In ruling on a *section 2-619* motion to dismiss, a court may consider pleadings, depositions and affidavits. *Zedella*, 165 Ill. 2d at 185. A reviewing court will determine the propriety of the granting of the motion to dismiss *de novo. Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50 (1993). The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993)**[***817]** . **[**649]** For the purposes of a motion to dismiss, we must accept as true all well-pleaded facts in a plaintiff's complaint and all inferences that can reasonably be drawn in his favor from those facts. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 510, 159 N.E.2d 507, citing *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 9, 607 N.E.2d 201 (1992).

We begin by addressing count I, the retaliatory discharge. The common law tort of retaliatory discharge was first recognized in Illinois as a cause of action in *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). A retaliatory discharge is a limited and narrow **[*193]** exception (*Wieseman v. Kienstra, Inc.*, 237 Ill. App. 3d 721, 604 N.E.2d 1126 (1992)) to the general rule that states that all employment is at will and that an employer may discharge an employee for any or no reason. *Spann v. Springfield Clinic*, 217 Ill. App. 3d 419, 577 N.E.2d 488 (1991). For a claim of retaliatory discharge to be valid, it must contain allegations that (1) the plaintiff was discharged, (2) the discharge was in retaliation for plaintiff's activities, and (3) the discharge violated a clear mandate of public policy. *Dudycz v. City of Chicago*, 206 Ill. App. 3d 128, 133, 563 N.E.2d 1122 (1990), citing *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 529, 519 N.E.2d 909 (1988).

The Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 1994)) became effective on July 1, 1980. Thus, a statutory retaliatory discharge cause of action came into existence. In its declaration of policy, the Act states that it is the public policy of Illinois to prevent sexual harassment in employment (775 ILCS 5/1-102(B) (West 1994)). The Act defines "sexual harassment" as "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature" such as conduct that "has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment" (775 ILCS 5/2-101(E) (West 1994)). Under the Act:

"It is a civil rights violation for a person, or for two or more persons to conspire, to:

*** [r]etaliate against a person because he has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment *** or because *he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act.*" (Emphasis added.) 775 ILCS 5/6-101(A) (West 1994).

Furthermore, the Act provides, in pertinent part, that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this [a]ct" (775 ILCS 5/8-111(C) (West 1994)). This act provides a means of redress for civil rights violations to the exclusion of common law retaliatory discharge actions (*Faulkner-King v. Department of Human Rights*, 225 Ill. App. 3d 784, 587 N.E.2d 599 (1992)), and, accordingly, a complainant must first file a charge of discrimination with the Illinois Department of Human Rights before seeking further redress.

In the instant case, plaintiff reported the sexual harassment carried on by a supervisor as was required by defendant's "No **[*194]** Harassment" policy, even though plaintiff himself was not the object, or the victim, of his supervisor's alleged sexual harassment. Consequently, according to plaintiff, he was fired. Plaintiff believes that this constituted a retaliatory discharge. We agree and find that the Act covers such a retaliatory discharge action. We note that it is irrelevant whether the sexual harassment was directed at plaintiff or whether plaintiff merely reported the harassment. The Act defines retaliatory discharge as a violation of civil rights, and it is now the exclusive means for redress for a civil rights violation (775 ILCS 5/6-101(A) (West 1994)). Thus, we hold that the Act preempts the common law retaliatory discharge. Under these facts, the Act's jurisdictional bar was triggered. Plaintiff had to timely file his charge of discrimination with the Illinois Department of Human Rights. Accordingly, we affirm

**Bloomberg Law**®

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Case: 1:20-cv-00928 Document #: 17-2 Filed: 07/24/20 Page 4 of 38 PageID #:89

Corluka v. Bridgford Foods of Illinois, Inc., 284 Ill. App. 3d 190, 219 Ill. Dec. 647, 671 N.E.2d 814, 12 IER Cases 379 (App. 1st Dist.

the circuit court's dismissal of count I as it is preempted by the Act.[**650] [***818]

As to count II, the breach of contract claim, plaintiff argues that the Act was not intended to preempt contract law. We agree.

Plaintiff in this case relied on defendant's harassment policy written in a memorandum dated April 19, 1994, which stated in pertinent part:

> "It is the policy of our Company, that it will not tolerate harassment of our employees. The term 'harassment' includes, but is not limited to, *** conduct relating to an individual's race, color, sex, religion, national origin, citizenship, age or disability. 'Harassment' also includes sexual advances, requests for sexual favors, unwelcome or offensive touching, and other *** conduct of a sexual nature.

> If you feel you are being harassed in any way by another employee *** you should make your feelings known immediately. You may report harassment to your supervisor[.]

> *Rest assured that you will not be penalized in any way for reporting harassment concerning yourself or any other person. The Company will take immediate action to punish anyone who seeks reprisal as a consequence of harassment being reported.*

> All harassment complaints will be thoroughly investigated, and when appropriate, corrective action including disciplinary action, will be taken. We consider harassment to be a major offense which can result in suspension or discharge of an offender. ***

> *Above is the policy of Bridgford Foods Corporation and its subsidiaries.*" (Emphasis added.)

Plaintiff averred in his complaint that defendant's policy constituted a contract between the parties.

Whether a contract exists is a question of law. See *Robinson v. Christopher Greater Area Rural Health Planning Corp.*, 207 Ill. App. 3d 1030, 566 N.E.2d 768 (1991). [*195] A court may interpret the contract as a matter of law and make an appropriate ruling, including a dismissal under *section 2-619* of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1994)). See *Ragus Co. v. City of Chicago*, 257 Ill. App. 3d 308, 628 N.E.2d 999 (1993).

An employee handbook or other policy statement creates enforceable contractual rights provided the following requirements are satisfied: (1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer was made; (2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 489, 505 N.E.2d 314 (1987). The efficacy of plaintiff's appeal rests on the first requirement, *i.e.*, whether the April 19 memorandum and the employee manual contained a promise clear enough that plaintiff would reasonably believe that he should report incidents of harassment without being penalized in any way.

After carefully reviewing the memorandum, we conclude that it stated more than just a general policy or employer expectations. The memorandum pronounces that defendant would not tolerate any harassment, including sexual harassment, of any kind. It further stated that if an employee is being harassed, he should make his feelings known "immediately." Defendant specifically states that an employee "will not be penalized in any way for reporting harassment" and that defendant will take immediate corrective action after a thorough investigation. Defendant emphatically states that harassment is a major offense that can result in suspension or discharge of an offender. Clearly, this states a promise by defendant to end any harassment employees may experience. Defendant relies on the employees to report any incidents of harassment. The April 19 memorandum was distributed to all the employees. We believe it is reasonable for plaintiff to find an offer was made, an offer that was accepted. Plaintiff, relying on

**Bloomberg Law**®    © 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Case: 1:20-cv-00928 Document #: 17-2 Filed: 07/24/20 Page 5 of 38 PageID #:90

Corluka v. Bridgford Foods of Illinois, Inc., 284 Ill. App. 3d 190, 219 Ill. Dec. 647, 671 N.E.2d 814, 12 IER Cases 379 (App. 1st Dist.

defendant's policy statement, carried out his contractual obligations by reporting incidents **[**651] [***819]** of sexual harassment. Accordingly, we find that the sexual harassment policy was a contractual right of plaintiff under *Duldulao*. That said, we must now turn to the question of whether such a breach of contract claim is precluded by the Act.

While both the contractual and retaliatory discharge claims may rise from the same core of operative facts, a breach of contract **[*196]** claim is a separate and distinct claim from that of retaliatory discharge, whose genesis is in tort law. We read nothing in the Act or case law which suggests that it was meant to preempt contract law. Accordingly, we believe the circuit court erred in dismissing count II of plaintiff's claim. In so holding, we wish to emphasize that our decision here is anchored on the fact that defendant had a very explicit policy statement that rose to the level of contract under *Duldulao*. It still remains to be determined by the trier of fact whether defendant actually breached the contract by discharging plaintiff.

In light of our disposition of the last issue, we need not address plaintiff's promissory estoppel claim since a contract was found.

For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County and remand for further proceedings not inconsistent with the views contained herein.

Affirmed in part; reversed in part and remanded for further proceedings.

CERDA and GALLAGHER, JJ., concur.

---

### Table of Cases

Zedella v. Gibson, 165 Ill. 2d 181, 185, 650 N.E.2d 1000 (1995)
Toombs v. City of Champaign, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50 (1993)
Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993)
Geise v. Phoenix Co. of Chicago, Inc., 159 Ill. 2d 507, 510, 159 N.E.2d 507
Kolegas v. Heftel Broadcasting Corp., 154 Ill. 2d 1, 9, 607 N.E.2d 201 (1992)
Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 384 N.E.2d 353 (1978)
Wieseman v. Kienstra, Inc., 237 Ill. App. 3d 721, 604 N.E.2d 1126 (1992)
Spann v. Springfield Clinic, 217 Ill. App. 3d 419, 577 N.E.2d 488 (1991)
Dudycz v. City of Chicago, 206 Ill. App. 3d 128, 133, 563 N.E.2d 1122 (1990)
Hinthorn v. Roland's of Bloomington, Inc., 119 Ill. 2d 526, 529, 519 N.E.2d 909 (1988)
Faulkner-King v. Department of Human Rights, 225 Ill. App. 3d 784, 587 N.E.2d 599 (1992)
Robinson v. Christopher Greater Area Rural Health Planning Corp., 207 Ill. App. 3d 1030, 566 N.E.2d 768 (1991)
Ragus Co. v. City of Chicago, 257 Ill. App. 3d 308, 628 N.E.2d 999 (1993)
Duldulao v. St. Mary of Nazareth Hospital Center, 115 Ill. 2d 482, 489, 505 N.E.2d 314 (1987)



Case: 1:20-cv-00928 Document #: 17-2 Filed: 07/24/20 Page 6 of 38 PageID #:91

Corluka v. Bridgford Foods of Illinois, Inc., 284 Ill. App. 3d 190, 219 Ill. Dec. 647, 671 N.E.2d 814, 12 IER Cases 379 (App. 1st Dist.

Corluka v. Bridgford Foods of Illinois, Inc., 284 Ill. App. 3d 190, 219 Ill. Dec. 647, 671 N.E.2d 814, 12 IER Cases 379 (App. 1st Dist. 1996), Court Opinion

## Direct History

1   **Corluka v. Bridgford Foods of Illinois, Inc., 284 Ill. App. 3d 190, 219 Ill. Dec. 647, 671 N.E.2d 814, 12 IER Cases 379 (App. 1st Dist. 1996)**
*affirming the order (in part), reversing the order (in part) and remanding the case in*
Unpublished Opinion or Order

| Direct History Summary | |
| --- | --- |
| ⚠ Caution | 0 |
| ▬ Negative | 0 |
| Total | 0 |

## Case Analysis ( 16 cases )

| 1 | ✚ ▮▮▯▯ | Discussed in , Quoted | ⬛ Khan v. Bd. of Educ. of Chi., No. 17 CV 9300, 2018 BL 438687, 2018 FEP Cases 438687, 2018 WL 6192191 (N.D. Ill. Nov. 28, 2018) |
| 2 | ✚ ▮▯▯▯ | Cited in | ✚ Masud v. Rohr-Grove Motors, Inc., No. 13 C 6419, 2015 BL 335983, 128 FEP Cases 324, 2015 Us Dist Lexis 138825, 2015 WL 5950712 (N.D. Ill. Oct. 13, 2015) |
| 3 | ✚ ▮▯▯▯ | Cited in | ⬜ O'Hare Ground Transp. Facility, LLC v. Commercial Vehicle Ctr., LLC, 2013 IL App (1st) 121428-U |
| 4 | ✚ ▮▯▯▯ | Cited in , (See) | ✚ Johnson v. Orkin, LLC, No. 12-CV-00141, 2012 BL 432417 (N.D. Ill. Aug. 13, 2012) |
| 5 | ✚ ▮▯▯▯ | Cited in , (See) | ⬜ Woods v. Wickes Furniture Co., No. 09 CV 300., 2011 BL 196858 (N.D. Ill. July 28, 2011) |
| 6 | ✚ ▮▯▯▯ | Cited in , (See) | ✚ Bozek v. Corinthian Colleges, Inc., Case No. 07 C 4303., 2009 BL 28457, 2009 WL 377552 (N.D. Ill. Feb. 13, 2009) |
| 7 | ◨ ▮▯▯▯ | Distinguished in | ◨ Blount v. Stroud, 232 Ill. 2d 302, 328 Ill. Dec. 239, 904 N.E.2d 1, 105 FEP Cases 613 (2009) |
| 8 | ✚ ▮▯▯▯ | Discussed in , (See, e.g.) | ✚ Hobson v. Tishman Speyer Props., No. 07 C 5744, 2008 BL 138088, 2008 WL 2625905 (N.D. Ill. June 27, 2008) |
| 9 | ✚ ▮▯▯▯ | Cited in , (See, e.g.) | ✚ Hill v. Village of Franklin Park, No. 07 CV 4335, 2008 BL 49142, 2008 Us Dist Lexis |

| Case Analysis Summary | |
| --- | --- |
| ✚ Positive | 14 |
| ◨ Distinguished | 2 |
| ⚠ Caution | 0 |
| ▬ Superseded | 0 |
| ▬ Negative | 0 |
| Total | 16 |

| Authorities Summary | |
| --- | --- |
| ✚ Positive | 14 |
| ◨ Distinguished | 0 |
| ⚠ Caution | 0 |
| ▬ Superseded | 0 |
| ▬ Negative | 0 |
| Total | 14 |

Case: 1:20-cv-00928 Document #: 17-2 Filed: 07/24/20 Page 7 of 38 PageID #:92

Corluka v. Bridgford Foods of Illinois, Inc., 284 Ill. App. 3d 190, 219 Ill. Dec. 647, 671 N.E.2d 814, 12 IER Cases 379 (App. 1st Dist.

## Case Analysis ( 16 cases )

|    |              |                                      |                                                                                                                        |
|----|--------------|--------------------------------------|------------------------------------------------------------------------------------------------------------------------|
|    |              |                                      | 18509, 2008 WL 686256 (N.D. Ill. Mar. 11, 2008)                                                                          |
| 10 | Cited in     |                                      | Blount v. Stroud, 376 Ill. App. 3d 935, 315 Ill. Dec. 562, 877 N.E.2d 49, 101 FEP Cases 1542 (App. 1st Dist. 2007)      |
| 11 | Cited in , (See) |                                  | Arthur J. Gallagher & Co. v. Youngdahl, 412 F. Supp. 2d 1013 (D. Minn. 2006)                                            |
| 12 | Discussed in , (Compare) , Quoted |                     | Arnold v. Janssen Pharmaceutica, Inc., No. 01 C 8138, 2005 BL 10214, 2005 WL 1189596 (N.D. Ill. May 16, 2005)           |
| 13 | Cited in     |                                      | Thomas v. Habitat Co., 213 F. Supp. 2d 887, 89 FEP Cases 1112 (N.D. Ill. 2002)                                          |
| 14 | Discussed in , Quoted |                         | Wexler v. Morrison Knudsen Corp., No. 99 C 6522, 2000 BL 992, 17 IER Cases 105, 2000 WL 1720344 (N.D. Ill. Nov. 15, 2000) |
| 15 | Distinguished in , Quoted |                     | Finnane v. Pentel of America, Ltd., 43 F. Supp. 2d 891 (N.D. Ill. 1999)                                                 |
| 16 | Cited in     |                                      | D 56, Inc. v. Berry's Inc., 955 F. Supp. 908 (N.D. Ill. 1997)                                                           |

## Table Of Authorities ( 14 cases )

|   |                 |                                                                                                                   |
|---|-----------------|-------------------------------------------------------------------------------------------------------------------|
| 1 | Cited           | Zedella v. Gibson, 165 Ill. 2d 181, 209 Ill. Dec. 27, 650 N.E.2d 1000 (1995)                                      |
| 2 | Cited           | Geise v. Phoenix Co. of Chicago, Inc., 159 Ill. 2d 507, 203 Ill. Dec. 454, 639 N.E.2d 1273, 69 FEP Cases 602 (1994) |
| 3 | Cited , (See)   | Ragus Co. v. City of Chicago, 257 Ill. App. 3d 308, 195 Ill. Dec. 535, 628 N.E.2d 999 (App. 1st Dist. 1993)        |
| 4 | Cited           | Kedzie & 103rd Currency Exch., Inc. v. Hodge, 156 Ill. 2d 112, 189 Ill. Dec. 31, 619 N.E.2d 732 (1993)             |
| 5 | Cited           | Wieseman v. Kienstra, Inc., 237 Ill. App. 3d 721, 178 Ill. Dec. 603, 604 N.E.2d 1126 (App. 5th Dist. 1992)         |
| 6 | Cited           | Kolegas v. Heftel Broadcasting Corp., 154 Ill. 2d 1, 180 Ill. Dec. 307, 607 N.E.2d 201, 20 Med. L. Rptr. 2105 (1992) |

## Table Of Authorities ( 14 cases )

| 7 | ✚ ▮▮▮▮ Cited | ✚ Faulkner-King v. Dept. of Human Rights, 225 Ill. App. 3d 784, 167 Ill. Dec. 330, 587 N.E.2d 599 (App. 4th Dist. 1992) |
|---|---|---|
| 8 | ✚ ▮▮▮▮ Cited | ✚ Spann v. Springfield Clinic, 217 Ill. App. 3d 419, 160 Ill. Dec. 358, 577 N.E.2d 488 (App. 4th Dist. 1991) |
| 9 | ✚ ▮▮▮▮ Cited , (See) | ✚ Robinson v. Christopher Greater Area Rural Health Planning Corp., 207 Ill. App. 3d 1030, 152 Ill. Dec. 891, 566 N.E.2d 768, 7 IER Cases 436 (App. 5th Dist. 1991) |
| 10 | ✚ ▮▮▮▮ Cited | 🔷 Hinthorn v. Roland's of Bloomington, Inc., 119 Ill. 2d 526, 116 Ill. Dec. 694, 519 N.E.2d 909, 3 IER Cases 434 (1988) |
| 11 | ✚ ▮▮▮▮ Cited | 🔶 Duldulao v. Saint Mary of Nazareth Hosp. Ctr., 115 Ill. 2d 482, 106 Ill. Dec. 8, 505 N.E.2d 314, 1 IER Cases 1428 (1987) |
| 12 | ✚ ▮▮▮▮ Cited | 🔷 Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 23 Ill. Dec. 559, 384 N.E.2d 353, 115 LRRM 4371 (1978) |
| 13 | ✚ ▮▮▮▮ Cited | ✚ Clark v. G. A. Ball-Bearing Mfg. Co., 245 Ill. App. 579 (App. 1st Dist. 1927) |
| 14 | ✚ ▮▮▮▮ Cited | ✚ Whitaker v. Irons, 206 Ill. App. 124 (App. 4th Dist. 1917) |

✠ Garcia v. Complete Bldg. Maint. Co., No. 12-CV-4891., 2014 BL 40848, 2014 Us Dist Lexis 18941, 2014 WL 652887 (N.D. Ill.

Pagination
*    BL

United States District Court, N.D. Illinois

RODRIGO GARCIA, Plaintiff, v. COMPLETE BUILDING MAINTENANCE CO., and BILL ANDERSON, Defendants.

12-CV-4891.
February 14, 2014.

Memorandum Opinion and Order

Arlander Keys, Magistrate Judge

Currently before the Court is Defendants' motion for summary judgment [Dkt #48]. Plaintiff, Rodrigo Garcia ("Mr. Garcia"), filed a five-count amended complaint against Defendants, Bill Anderson ("Mr. Anderson") and Complete Building Maintenance Co. ("Complete"), alleging that Defendants subjected him to a racially hostile working environment; fired him because of his race or because he complained of race harassment; and fired him because he complained to law enforcement about another foreman's criminal conduct. Defendants argue that the undisputed facts demonstrate that Mr. Garcia's termination had nothing to do with race or retaliation; instead, they argue he was terminated on the basis of Complete's financial situation and his lack of productivity as a foreman. For the reasons set forth below, Defendants' motion is granted.

Procedural History

On July 13, 2012, Plaintiff filed his amended complaint against Defendants. [dkt #15]. Defendant Complete answered Mr. Garcia's Complaint and pled affirmative defenses, including, but not limited to, failure to state a claim upon which relief can be granted and that Plaintiff's employment was terminated for legitimate, non-discriminatory reasons. [dkt #16]. Defendant now moves this Court to enter an order granting summary judgment in its favor, arguing that Mr. Garcia cannot establish a genuine issue of material fact that a reasonable jury could resolve in his favor. (Defs.' Reply at p. 1). The parties have consented to proceed before this Court pursuant to 28 U.S.C. § 636(c)(1). [dkt #43].

Factual Background

The facts herein are drawn from the parties' Local Rule 56.1 submissions. [dkt #48, 55, 56, 61]. Each paragraph of the Local Rule 56.1 submissions must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Most of the underlying facts of this case are agreed to and undisputed; it is noted when the parties disagree.

Complete is a commercial roofing company that employs its construction personnel on a seasonal basis; employees generally apply for and receive unemployment during the winter months, and reapply for work at Complete in early spring. (Defendant's Local Rule 56.1 Filing ("Def. St."), ¶¶ 1-2). Mr. Garcia began his employment with Complete in 1989 as a laborer performing roofing work. ( *Id. at ¶ 13*). Mr. Garcia is of Mexican national origin, or Hispanic. (Plaintiff's Response to Defendant's Local Rule 56.1 Filing ("Pl. Resp"), ¶ 4). Mr. Garcia enjoyed the financial stability that the work provided, and the seasonal layoff allowed him to return to his native Mexico once a year to be with his wife and children for a few months. (Plaintiff's Local Rule 56.1 Add'l Facts ("Pl. Add'l St."), ¶ 32). Eventually, Mr. Garcia's wife and children immigrated to the United [*2] States, and his children — once they reached the age of eighteen — began working alongside him at Complete. (Pl. Add'l. St., ¶ 33).

After his foreman at the time, Al Berlanga, was unable to return to work due to illness, Mr. Garcia was promoted to the



position of foreman by Bob Gianatasio in 1996. (Def. St., ¶ 14). Bill Anderson recommended the promotion along with Bob Majka. *Id.* When Mr. Garcia worked for Complete as a foreman, he supervised a crew of approximately eight to ten workers. (Pl. Add'l. St., ¶ 32). Mr. Garcia's personnel file reveals not a single instance of misconduct or discipline. ( *Id. at 33*).

Mr. Garcia claims that Complete paid him less than similarly-situated non-Hispanic foremen. (Def. St., ¶ 9). Mr. Garcia admits, however, that he did not know whether the non-Hispanic foremen who were paid a higher wage were paid so because of longer tenure or not. *Id.* The rates of pay and years of service for foremen at the time of Mr. Garcia's termination were as follows:

Foreman Name Race Hourly Rate (2008) Hire Date Promotion Date Tab Rand Caucasian $39.90 8/18/1976 1981 Marlin Thomas African-Amer. $35.00 4/26/1977 1985 Robin Mildebrath Caucasian $32.70 6/30/1980 1983 Francisco Herrera Hispanic $30.70 8/4/1980 1994 Eusebio Llanes Hispanic $22.70 2/17/1984 2000 Pedro Llanes Hispanic $28.30 5/11/1987 1994 Martin Alvear Hispanic $22.60 3/21/1989 2003 Rodrigo Garcia Hispanic $27.10 5/23/1989 1996

*Id.*

In 2008, Complete claims that, due to the economic recession and substantially reduced jobs and revenue, which jeopardized Complete's ability to remain in operation, only one crew received a bonus — Marlin Thomas' crew. (Def. St., ¶ 12). Mr. Thomas (African-American) and his crew (Hispanic) received a "bonus" because they traveled to and worked at an out-of-state jobsite for an extended period of time. *Id.* Mr. Garcia acknowledged the economic recession of 2008, and admits that he did not know whether other foremen received a bonus in 2008. *Id.*

Also in 2008, Mr. Gianatasio decided, along with Paul Smith, the majority owner of Complete, that due to reduced work orders and substantially reduced revenue, in order to remain in business, Complete management needed to urgently and substantially reduce their salaries. ( *Id. at 16*). The reductions ranged from 80% (for Paul Smith); approximately 40% for Mr. Gianatasio, Mr. Anderson and Mr. Majka, to 50% for Russ Streeter and Richard Willix (Sales), 30% Paul Smith, Jr. (Service), and 12% for Thomas Sipolt (Estimator). *Id.* The pay decreases did not affect any of Complete's hourly employees and did not affect any Hispanic or Mexican employees. *Id.* At around the same time that it was determined that Complete management needed to accept substantial reductions in pay, it was also decided that it was necessary to reduce the number of production crews from seven to six to ensure that the crews employed by Complete had enough work. ( *Id. at 17*).

Mr. Gianatasio made the decision that Mr. Garcia was the foreman who would not be rehired in the spring of 2009 because he determined that Mr. Garcia was the least productive foreman based upon his review of weekly foremen reports over the years and upon his review of multi-year summary [*3*] reports of foremen productivity ("Foreman Productivity Reports"). (Def. St., ¶ 20) It is noted, however, that Mr. Garcia denies that Mr. Gianatasio determined that he should be fired because he was the least productive foreman. (Pl. Resp., ¶ 20). Mr. Garcia contends that Mr. Gianatasio "repeatedly told the EEOC and IDHR that it terminated Garcia's employment because (1) he did not accept constructive criticism from supervisors and (2) he was the least skilled foreman." *Id.*

Mr. Garcia claims that, from at least the early 1990s through December 2008, Bill Anderson frequently called Mr. Garcia and other workers "wetbacks," "beaners," "stupid Mexicans," "motherfuckers," "pigs," and "animals," told workers that they had no brains, threatened to report workers to immigration authorities, said that he was a born racist, and made other racially offensive comments. (Pl. Add'l. St., ¶ 1). Moreover, Mr. Garcia argues that Mr. Anderson used this racially offensive language at least two times per week during the time that Mr. Garcia worked for Complete, and did not make these statements to non-Mexican foreman. *Id.*

Complete disputes these facts, arguing that Mr. Garcia "offered numerous affidavits purporting to corroborate his extraordinary charges, but upon deposition of the affiants, the statements in the affidavits were found to be largely inconsistent. (Defendant's Response to Plaintiff's Local Rule 56.1 Filing ("Def. Resp"), ¶ 1).

Lastly, Mr. Garcia claims that Complete retaliated against him after he made complaints to management known about another foreman, Robin Mildebrath (white). Mr. Garcia states that Mr. Mildebrath was addicted to cocaine, and that from at least the early 2000s until the end of 2004, Mr. Mildebrath used racist language around workers, spoke to workers about sex, exposed his penis to workers, and touched workers on their butts. (Pl. Add'l. St., ¶ 3). Mr. Garcia reported Mr. Mildebrath's misconduct to Complete management, but claims Complete took no corrective action thereafter. ( *Id. at ¶ 4*).

At the outset, Complete objects to any use of statements or acts regarding Mr. Mildebrath, or that occurred in his presence, due to the Illinois Dead Man's Act, 735 ILCS 5/8-201, which prevents the introduction of a deceased person's statements asserted at a civil trial. (Def.'s Add'l. St., ¶ 3). Moreover, Complete challenges the relevancy of these facts to the claims asserted in this matter. *Id.* Next, Complete denies each of Mr. Garcia's claims, including that it was aware of Mr. Mildebrath's addiction issues, that Mr. Mildebrath used inappropriate language or made inappropriate gestures, and that Complete took no corrective action on Mr. Garcia's September 2008 complaints of Mr. Mildebrath. *Id.* Complete acknowledges that Mr. Garcia has filed sexual harassment charges in a complaint that is currently pending before the Illinois Human Rights Commission. *Id.*

On February 9, 2005, a DuPage County grand jury indicted Mr. Mildebrath for, among other things, Burglary and Attempted Aggravated Criminal Sexual Assault. (Pl. Add'l. St., ¶ 5). Mr. Mildebrath was incarcerated from early 2005 until August 2008, and upon his release, Mr. Mildebrath returned to **[*4]** work at Complete Building Maintenance, and Complete placed Mr. Mildebrath on Mr. Garcia's work crew. ( *Id. at ¶ 7*). Complete does not dispute these facts, however, it objects on the grounds of relevancy, and adds that Complete previously allowed a Hispanic employee to return to work following a prison term, as well. (Def.'s Add'l. St., ¶ 7).

On September 7, 2008, Mr. Garcia claims that, the Parole Division placed Mr. Mildebrath on house arrest, and, in response, Complete removed Mr. Mildebrath from Mr. Garcia's crew. (Pl. Add'l. St., ¶ 13). Mr. Garcia argues that Complete suspected that he reported Mr. Mildebrath to the Parole Division, and that this attributed to Complete's decision to fire him. *Id.* Complete asserts that the sole reason for Mr. Mildebrath's house arrest was Plaintiff's report to authorities, but denies that Mr. Mildebrath's change in placement was in response to his house arrest. (Def.'s Add'l. St., ¶ 13).

<u>Standard of Review</u>

Summary judgment is proper if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Though this standard places the initial burden on the moving party, once it has met this burden of production, the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). When deciding whether summary judgment is proper, the Court must accept the non-moving party's evidence as true and draw all inferences in favor of that party, here the Plaintiff, Mr. Garcia. *See Anderson*, 477 U.S. at 255.

In order to successfully oppose a motion for summary judgment, the non-moving party must do more than raise a metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586. (1986). Rather, it must come forward with specific facts showing that there is a genuine issue for trial.  Id. at 587. The non-moving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

<u>Analysis</u>



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. <u>Terms of Services</u>

Case: 1:20-cv-00928 Document #: 17-2 Filed: 07/24/20 Page 12 of 38 PageID #:97

Garcia v. Complete Bldg. Maint. Co., No. 12-CV-4891., 2014 BL 40848, 2014 Us Dist Lexis 18941, 2014 WL 652887 (N.D. Ill. Feb.

Complete asserts that summary judgment in this case is proper because all of the material undisputed facts, pleadings, depositions, written discovery, and affidavits establish that Mr. Garcia was not terminated on the basis of his national origin or race, nor was Mr. Garcia racially harassed or retaliated against for his complaints of sexual harassment. Instead, Complete argues, the undisputed material [*5] facts demonstrate that Mr. Garcia was terminated on the basis of Complete's financial constraints and his lack of productivity. Mr. Garcia filed his amended complaint against Complete alleging the following five claims: (1) race harassment under 42 U.S.C. 1981 (Section 1981) (Count I); (2) race discrimination under Section 1981 (Count II); (3) retaliation for alleged complaints of race discrimination under Section 1981 (Count III); (4) a claim under the Illinois Whistleblower Act alleging retaliation for his complaints of alleged sexual harassment (Count IV); and (5) Illinois common law retaliatory discharge (Count V). Complete seeks summary judgment as to all counts of Mr. Garcia's amended complaint. The Court will analyze each count in turn.

I. Race Harassment Under Section 1981

Mr. Garcia argues that he has offered a remarkable amount of evidence to prove to a jury that he was racially harassed over a twenty-year timeframe. (Pl.'s Resp. at p. 19). He avers that, from "at least the early 1990s through December 2008, Bill Anderson frequently called Mr. Garcia and other workers "wetbacks," "beaners," "stupid Mexicans," "motherfuckers," "pigs," and "animals," told workers that they had no brains, threatened to report workers to immigration authorities, said that he was a born racist, and made other racially offensive comments." (Pl.'s Resp. at p. 19). Additionally, Mr. Garcia has offered testimony of ten other current and former Complete employees who corroborate that Mr. Anderson frequently used racist language when addressing Mr. Garcia's work crew. *Id.* However, aside from making the claim, Mr. Garcia spends very little space arguing this count, seemingly relying on the claims in and of themselves, as well as the submitted affidavits from his crew members, to belay the point. Complete argues that the affidavits Mr. Garcia provided consisted of family and friends, none of whom were terminated, but almost none of whom returned to Complete after Mr. Garcia, their father/relative/friend, was terminated. (Def.'s Reply at p. 18). Additionally, Complete argues that once deposed, "(at least until Plaintiff's counsel showed the witnesses the affidavits), the testimony varied and was substantially inconsistent with the affidavits. In fact, Mr. Garcia's sons could not even decide in their depositions whether they had been terminated or not." *Id.*

The Court finds several undisputed facts to be inconsistent with Mr. Garcia's claim of a hostile work environment, including that: Plaintiff referred each of his children, as soon as they turned 18 years old, as well as several friends, to work at Complete under the same supervisor and alongside the same employee (Mr. Mildebrath) whom he claimed subjected him to harassment "sufficiently severe or pervasive to interfere with an employee's ability to perform his assigned duties." (Def.'s Reply at p. 18). There is no dispute that Mr. Garcia never so much as mentioned the "severe" or "pervasive" harassment to his children and friends. *Id.*

It is well settled that, in considering a harassment claim, the offensiveness of the work environment is evaluated from both the subjective [*6] standpoint of the plaintiff, as well as the objective standpoint of a reasonable person in the plaintiff's position. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275 (1998). The fact that Mr. Garcia would have recommended one child or one friend to work at Complete while he was allegedly enduring such alleged harassment would be, in and of itself, irreconcilable with his establishment of a subjectively hostile work environment. As Defendants point out, the fact that Plaintiff would recommend all of his adult male children to work at Complete, with the same people who allegedly subjected him to such egregious harassment, without even warning of the alleged harassment, renders a decision in Mr. Garcia's favor on his harassment claim difficult.

These facts, which are undisputed, preclude a reasonable jury from finding in Mr. Garcia's favor on his hostile work environment claim. Accordingly, the Court finds summary judgment appropriate as to Count I.

II. Race Discrimination Under Section 1981

Mr. Garcia argues that he has offered sufficient evidence for a jury to conclude that he was fired because of his race. Mr. Garcia proceeds pursuant to the indirect, burden-shifting method of analysis in support of his race discrimination claim. In order to establish a *prima facie* case under the indirect method, Mr. Garcia must show that (1) he was a



member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) that Complete treated similarly situated individuals outside Mr. Garcia's protected class more favorably. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 394 (7th Cir. 2010). If Mr. Garcia satisfies these elements, thus giving rise to an inference of discrimination, the burden would shift to Complete to identify a legitimate, nondiscriminatory reason for the action taken. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). If Complete can proffer a nondiscriminatory reason for terminating Mr. Garcia, summary judgment would then only be erroneous if Mr. Garcia produced evidence that the proffered reason was a pretext for racial discrimination. *Id.*

Complete contends that, regardless of whether Mr. Garcia employs the direct or indirect method of analysis, a jury could not reasonably find that a company who employed nearly all Mexican employees and foremen terminated Mr. Garcia on account of his race. Moreover, Complete argues that Mr. Garcia's complaint never pled that he was terminated on account of race, thus justifying dismissal on that ground alone. Although the complaint may have not been clear on the pleading, the Court will analyze the merits.

As to the first element of the four-part standard, Mr. Garcia is Mexican, and thus a member of a protected class. Second, Complete concedes that, although it considered him the weakest of its foreman, "but for the recession, [Mr. Garcia's] employment was sufficiently satisfactory so that his employment would not have been terminated." (Defs.' Reply at p. 13). Therefore, the Court finds that the second element, that he was performing his job satisfactorily, is met as well. There is no dispute **[*7]** that the third element is met, as Mr. Garcia suffered an adverse employment action by being terminated. The fourth element is wherein the dispute lies, whether Complete treated similarly situated individuals who were not Mexican more favorably.

It is undisputed that, at the time of Mr. Garcia's termination, there were seven working roof production foremen, five of whom were Mexican. (Defs.' Reply at p. 14). Additionally, it is undisputed that all foremen hired since 1985 were Mexican, and that each of the non-Hispanic foremen was at least 10 years more senior than Mr. *Id.* Lastly, it is also undisputed that the foremen productivity reports reviewed by management all showed Mr. Garcia to be the least productive foreman. *Id.* Mr. Garcia contends that the fourth element is met because Mr. Mildebrath was treated more favorably. However, at the time of Mr. Garcia's termination, and insofar as Mr. Mildebrath's return to Complete following his release from prison, Mr. Mildebrath had not worked as a foreman and had no crew. Therefore, the Court cannot agree that Mr. Mildebrath was similarly situated to Mr. Garcia. As explained by the Seventh Circuit in *Chattic v. Illinois Dep't of Corrections*, [2013 BL 330941], 2013 WL 6172517 (7th Cir. 2013), in evaluating whether comparable coworkers are "similarly situated," courts will, "consider whether the employees held the same position, were subject to and performed up to the same standards, and reported to the same supervisor as the plaintiff." *Id.* at *1. In *Chattic*, the Seventh Circuit, affirming summary judgment in favor of the employer, rejected the plaintiff's proffered comparables where the comparables had fewer absences. *Id.* The court found that the plaintiff had also failed to present evidence of pretext where the employer terminated the plaintiff on account of absenteeism, and where the retained employees had fewer absences. *Id.*

Herein, the sole comparable proffered by Mr. Garcia is an individual who had been a foreman at Complete for over ten years longer than he, and had most recently not had a crew for four years. The Court finds no relevance in Mr. Garcia's argument regarding Mr. Mildebrath's absenteeism, which occurred four years prior to the timeframe of Mr. Garcia's termination. Lastly, the Court finds that Mr. Garcia has failed to present any evidence of pretext, and that the non-discriminatory reason for Mr. Garcia's termination — productivity — was indeed the honest reason. *See Smizer v. Community Mennoite Early Learning Center*, 538 Fed.Appx 711(7th Cir. 2013) ("Even if the Center's reason was not a good one, that is irrelevant if the Center honestly believed that the plaintiff wrote the post [which represented the stated reason for his termination].").

As a final argument to bolster Mr. Garcia's race discrimination claim, he alleges that he and other Mexican foremen were paid substantially lower end-of-the-year bonuses than similarly situated non-Mexican foremen. (Pl.'s Resp. at p. 16). Mr. Garcia asserts that the bonus figures and the productivity data from 2005-2007 demonstrate that "historically,

**Bloomberg Law**®
© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

there was little change from **[*8]** year-to-year in terms of who received the highest bonuses. In almost every year, Marlin Thomas (black) and Francisco Herrera (Mexican), the two foremen with the best productivity figures, received the highest bonuses. Then, Tab Rand (white), one of the weakest foremen according to productivity figures, received a year-end bonus just shy of Thomas's and Hernandez's bonus and often twice as large as the bonuses of Mexican foreman Garcia, Alvear, P. Llanes, and E. Llanes." ( *Id. at 17*).

The Court finds it difficult to reconcile Mr. Garcia's admission, that for several years, a Mexican foreman received one of the highest bonuses, with his allegation that Complete discriminates on the basis of bonus payments against Mexican/Hispanic foremen. Plaintiff provides a chart contrasting the bonuses foremen received from 2005-2007, with their respective productivity data, and argues that there is a "stark difference in year-end pay." *Id.* However, Mr. Gianatasio's testimony explained that bonuses were not based on productivity alone, but also considered other factors, such as skill and travel to distant worksites. (Defs.' Reply at p. 17).

Although Mr. Garcia disputes that the bonuses were based upon productivity, skill and travel, per se, he concedes that they were based on more than just productivity, explaining that "[a]ctually, the end-of-year bonus was based on performance during the year . . .[p]erformance encompassed safety, productivity, quality of work, and the types of jobs that the foreman received." Pl.' Resp. to Defs.' L.R. 56.1 SOF ¶ 10). The Court finds that, regardless of whether it follows Mr. Gianatasio or Mr. Garcia's definition of what a bonus encompassed, there is no evidence to support Mr. Garcia's bonus disparity claim. Accordingly, the Court finds summary judgment appropriate as to Count II.

## III. Retaliation for Race discrimination Under Section 1981

In order to defeat Defendants' motion for summary judgment on Count III, Mr. Garcia must offer evidence from which a jury could reasonably conclude that Complete fired him because he complained about race harassment, or because he complained to law enforcement about Mr. Mildebrath's criminal acts. Under the direct method, Mr. Garcia must show, through either direct or circumstantial evidence that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by Complete; and (3) there was a causal connection between the two. *See Egan v. Freedom Bank*, 659 F.3d 639, 642 (7th Cir. 2011).

Complete does not dispute elements one or two, yet argues that, with regard to the third element, no reasonable jury could conclude that there was a causal connection between Mr. Garcia's complaints of race harassment or criminal conduct and his termination. Indeed, the Court finds that Mr. Garcia leaves unaddressed several undisputed facts regarding Complete's employee demographics and his own work history, which could preclude a finding by a reasonable jury in Mr. Garcia's favor regarding his retaliation claims, including:

— Mr. Garcia was promoted to the position of Foreman after he had allegedly complained about Mr. Anderson **[*9]** and Mr. Mildebrath for at least six years [Plaintiffs Amended Complaint, ¶ 6];

— Mr. Gianatasio, Complete's President, the person to whom Mr. Garcia allegedly complained about Mr. Mildebrath prior to his promotion to foreman, approved Mr. Garcia's promotion from laborer to foreman [*Id. at ¶¶ 32*, 40];

— the vast majority of Complete's employees are Mexican [*Id. at ¶ 26*];

— the last six production foremen hired by Complete (since 1985) were Mexican [*Id. at ¶ 15*]; and

— Mr. Garcia had been a foreman for 10 years less than the only two non-Hispanic foremen working as foreman at the time of his termination [*Id. at ¶ 9*];

Mr. Garcia then employs a circumstantial evidence argument to proffer that, given Complete's allegedly more favorable treatment of Mr. Mildebrath, a jury reasonably could conclude that Mr. Garcia was not fired for productivity-related reasons, "but because Complete was upset about Mr. Garcia's complaints of race discrimination or his



© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Case: 1:20-cv-00928 Document #: 17-2 Filed: 07/24/20 Page 15 of 38 PageID #:100

Garcia v. Complete Bldg. Maint. Co., No. 12-CV-4891., 2014 BL 40848, 2014 Us Dist Lexis 18941, 2014 WL 652887 (N.D. Ill. Feb.

complaints to law enforcement. *See Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006) ("Circumstantial proof, such as the timing of events or the disparate treatment of similar individuals, may be sufficient to establish the defendant's retaliatory motive."); *Zitzka v. Vill. of Westmont*, 743 F.Supp.2d 887, 919 (N.D. Ill. 2010) ("Circumstantial evidence of retaliatory motive is more common, and may include the timing of events or the disparate treatment of similar individuals.")." (Pl.'s Resp. at p. 9).

The Court is unpersuaded by Mr. Garcia's circumstantial evidence argument, and finds that Complete had a legitimate nondiscriminatory reason for Mr. Garcia's termination. Complete maintains that, due to the economic downturn, it undertook drastic measures to reduce costs, which were necessary to avoid a financial crisis. (Def.'s Reply at p. 4). Significantly, this is not a fact disputed by Mr. Garcia, which the Court finds telling. Mr. Gianatasio made the decision to terminate Mr. Garcia, "because of the economic condition that the company was in." *Id.* And Mr. Gianatasio testified that he, "wish[ed] Rodrigo [Mr. Garcia] was still working at Complete" because that would be an indication that the company was healthier. *Id.* This is also not contested by Mr. Garcia.

The Court finds that, but for the downturn in the economy, Mr. Gianatasio made clear that Mr. Garcia would not have been terminated. The evidence of the poor economy and need to reduce one crew is not disputed. In addition to salary cuts, Complete also made the decision to eliminate one full crew, by terminating one foreman. *Id.* Furthermore, Mr. Gianatasio testified, and Mr. Garcia does not dispute, that he selected Mr. Garcia for termination based upon the foreman productivity data and because his efficiency numbers, or overruns, were the worst. *Id.* The Court finds that such undisputed facts dictate judgment in favor of Complete on Mr. Garcia's retaliation claims. Accordingly, the Court finds summary judgment appropriate as to Count III. IV. Illinois Claim of Retaliation for Complaints of Sexual Harassment and Illinois Common Law Retaliatory Discharge

Mr. Garcia has a retaliation claim currently pending, and stayed, before the Illinois Human Rights **[*10]** Commission under the Illinois Human Rights Act ("IHRA") with nearly identical facts to those alleged by him in support of Illinois Common Law and Illinois Whistleblower Act ("IWA") claims. Complete argues that Counts IV and V of Mr. Garcia's amended complaint, retaliation under the Illinois Whistleblower Act, are abrogated/preempted by the IHRA, which provides the sole remedy for any claim that is "inextricably linked" to an alleged violation of an employee's civil rights under the IHRA. *Giese v. Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 516 (1994).

In Counts IV and V of his amended complaint, Mr. Garcia alleges that Complete terminated him in retaliation for his alleged reporting of Mr. Mildebrath's harassment to the Lisle Police Department. The Court agrees that Counts IV and V of Mr. Garcia's complaint are based upon claims of retaliation which are inextricably linked to duties created by the IHRA, and are therefore preempted. Mr. Garcia attempts to refute the preemption argument, relying upon *Mendez v. Perla Dental*, 646 F.3d 420 (7th Cir. 2011). In *Mendez*, the plaintiff complained to the police about an incident when she was pushed to the floor and injured her back. The employer agreed that, "at the time the complaint was filed, the district court had subject matter jurisdiction over the Illinois retaliatory discharge claim because the claim had an *independent* basis." (emphasis added) *Id.*

In the instant case, the Court finds that the facts alleged to support the IWA claim are materially identical to those alleged in support of the IHRA claim, including Mr. Garcia's allegation that he was terminated on account of his complaints to the police regarding Mr. Mildebrath's sexual harassment. Mr. Garcia's common law retaliatory discharge and IWA claim are "inextricably intertwined" with his claim currently pending before the IHRC and thus must be dismissed as preempted under the IHRA. Accordingly, the Court finds summary judgment appropriate as to Counts IV and V.

Because Mr. Garcia's amended complaint fails on each count, Complete is entitled to summary judgment.

Conclusion

Defendant Complete's motion for summary judgment [dkt #48] is granted.



Bloomberg Law®

© 2020 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Services

Case: 1:20-cv-00928 Document #: 17-2 Filed: 07/24/20 Page 17 of 38 PageID #:102

Garcia v. Complete Bldg. Maint. Co., No. 12-CV-4891., 2014 BL 40848, 2014 Us Dist Lexis 18941, 2014 WL 652887 (N.D. Ill. Feb.

Garcia v. Complete Bldg. Maint. Co., No. 12-CV-4891., 2014 BL 40848, 2014 Us Dist Lexis 18941, 2014 WL 652887 (N.D. Ill. Feb. 14, 2014), Court Opinion

## Direct History

1 ⊞ **Garcia v. Complete Bldg. Maint. Co., No. 12-CV-4891., 2014 BL 40848, 2014 Us Dist Lexis 18941, 2014 WL 652887 (N.D. Ill. Feb. 14, 2014)**

*motion for summary judgment granted, case dismissed*

| Direct History Summary | |
| --- | --- |
| ⚠ Caution | 0 |
| ⊟ Negative | 0 |
| Total | 0 |

## Case Analysis ( 2 cases )

| | | | |
| --- | --- | --- | --- |
| 1 | ⊞ ▮▯▯▯ | Discussed in , (But see) | ⊞ Torres v. Merck Sharp & Dohme Corp., 255 F. Supp. 3d 826, 2017 AD Cases 195339 (N.D. Ill. 2017) |
| 2 | ⊞ ▮▯▯▯ | Discussed in , Quoted | ▨ Keen v. Merck Sharp & Dohme Corp., No. 15-cv-1178, 2015 BL 341327 (N.D. Ill. Oct. 16, 2015) |

| Case Analysis Summary | |
| --- | --- |
| ⊞ Positive | 2 |
| ◧ Distinguished | 0 |
| ⚠ Caution | 0 |
| ⬡ Superseded | 0 |
| ⊟ Negative | 0 |
| Total | 2 |



**User Name:** James J. Convery
**Date and Time:** Thursday, July 23, 2020 8:40:00 AM CDT
**Job Number:** 121768825

## Document (1)

1. *Hill v. Vill. of Franklin Park, 2008 U.S. Dist. LEXIS 83611*
   **Client/Matter:** 1000
   **Search Terms:** (scope w/3 charge) w/7 harassment
   **Search Type:** Terms and Connectors
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | Sources: IL,Federal; Cases |

A Neutral

As of: July 23, 2020 1:40 PM Z

## *Hill v. Vill. of Franklin Park*

United States District Court for the Northern District of Illinois, Eastern Division

September 5, 2008, Decided; September 5, 2008, Filed

Case No. 07 CV 4335

**Reporter**

2008 U.S. Dist. LEXIS 83611 *; 2008 WL 4181733

LARA HILL, Plaintiff, v. VILLAGE OF FRANKLIN PARK, et al., Defendants.

**Subsequent History:** Summary judgment granted by *Hill v. Norcomm Pub. Safety Communs., 2010 U.S. Dist. LEXIS 135606 (N.D. Ill., Dec. 22, 2010)*

**Prior History:** *Hill v. Vill. of Franklin Park, 2008 U.S. Dist. LEXIS 18509 (N.D. Ill., Mar. 11, 2008)*

## Core Terms

sexual, harassment, sex, retaliation, co-worker, overtime, hostile, notice, intimidated, ongoing

**Counsel:** **[*1]** For Lara Hill, Plaintiff: Dana L. Kurtz, LEAD ATTORNEY, Heidi Karr Sleper, Kurtz Law Offices, LLC, Lockport, IL.

For Village of Franklin Park, a municipal corporation, Defendant: Carrie A. Durkin, LEAD ATTORNEY, Litchfield Cavo, Chicago, IL; Claudia B Diaz, Litchfield Cavo LLP, Chicago, IL.

For Thomas Wolfe, Chief, in his individual capacity, Defendant: Angelo F. DelMarto, Richard J. Ramello, Storino, Ramello & Durkin, Rosemont, IL.

For Jack Krecker, in his individual capacity, Defendant: Jeannine Stephanie Gilleran, Litchfield Cavo, LLC,

Chicago, IL; Patrick John Ruberry, Litchfield Cavo, LLP, Chicago, IL.

For Joseph O'Connor, in his individual capacity, Defendant: John R Storino, Joseph G. Bisceglia, Justin Anthony Houppert, Jenner & Block LLP, Chicago, IL.

For Michael Jones, in his individual capacity, Defendant: Carrie A. Durkin, LEAD ATTORNEY, Litchfield Cavo, Chicago, IL; Claudia B Diaz, Litchfield Cavo LLP, Chicago, IL; John R Storino, Justin Anthony Houppert, Jenner & Block LLP, Chicago, IL.

For Michael Witz, in his individual capacity, Defendant: Elizabeth Ann Knight, LEAD ATTORNEY, Knight, Hoppe, Kurnik & Knight Ltd., Des Plaines, IL; Matthew Scott Clark, Knight, Hoppe, Kurnik & **[*2]** Knight LLC, Des Plaines, IL; Michael Jude Atkus, Knight Hoppe Kuraik & Koght, Ltd, Des Plaines, IL.

For Michael Tillman, in his individual capacity, Norcomm Public Safety Communications, Inc., Defendants: Jeffrey H. Lipe, LEAD ATTORNEY, Brigitte C Weyls, Jordan Douglas Shea, Williams, Montgomery & John, Ltd., Chicago, IL.

**Judges:** JOAN HUMPHREY LEFKOW, United States District Judge.

**Opinion by:** JOAN HUMPHREY LEFKOW

## Opinion

## MEMORANDUM DECISION AND ORDER

Lara Hill brings this action alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, among other allegations. Hill's complaint contains five counts, but only Count I is relevant here. Count I alleges that the Village of Franklin Park ("Franklin Park") and Norcomm Public Safety Communications, Inc. ("Norcomm") discriminated against and harassed Hill on the basis of her sex in violation of Title VII.

Before the court is Franklin Park's motion for judgment on the pleadings pursuant to *Rule 12(c) of the Federal Rules of Civil Procedure*, in which Franklin Park seeks dismissal of Hill's sexual harassment claim against it in Count I. [1] For the following reasons, Franklin Park's motion [# 103] will be granted.

## BACKGROUND

Hill's employment with Franklin Park began in 1994 at its police department. She worked there as a patrol officer, a School Liaison Officer ("SLO"), a field training officer, an evidence technician, and a member of the Tactical Unit. Hill's employment at Norcomm, which operates the 911 call center for Franklin Park, began in 2001. She worked there as a part-time dispatcher.

On June 30, 2006, Hill filed with the Equal Employment Opportunity Commission ("EEOC") a charge of sex discrimination, No. 440-2006-07366, [2] against Franklin Park. On the form, Hill marked the box indicating that she was alleging discrimination based on sex. She also stated on the form that the discrimination began on May 19, 2006 and that it was ongoing as of the date she filed the charge. [*4] In full, Hill's charge states as follows:

I began my employment with Respondent in October 1994, and my current position is Law Enforcement Officer. On or about May 19, 2006, Respondent made an exception to the normal practice of not allowing officers to work an overtime detail which starts before the end of their regular shift for a male co-worker but refused to make this same exception for me. On June 19, 2006, Respondent informed me that I would no longer receive specialty pay for my position and denied it to me retroactively from May 2004 to May 2005. On June 24, 2006 and again on or about June 26, 2006, instead of calling me, Respondent called in a less senior officer to work overtime to assist in an investigation. On June 28, 2006, Respondent informed me that I would be re-assigned from Investigations to Patrol, effective July 9, 2006.
I believe that I have been discriminated against based on my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Pl.'s Compl., Ex. A.

Hill alleges that after she filed this charge, Franklin Park committed numerous acts of sex discrimination against her, [3] and that Norcomm also began committing discriminatory acts. On March 6, 2007, Hill filed two additional charges with the EEOC: (1) No. 440-2007-03534, a charge of discrimination and retaliation against Norcomm Public Safety Communication, Inc., and (2) No. 440-2007-03535, a charge of retaliation against Franklin Park.

On December 11, 2007, Hill filed an amendment to her initial charge against Franklin Park, No. 440-2006-07366. In her amended charge, she states as follows:

1. Within the last 300 days and on a continuing and ongoing basis, Respondent has engaged [in] systemic and ongoing discrimination against me on account of my sex (female). Respondent has also retaliated against me for complaining [*6] about the unlawful conduct.
2. I was hired by Respondent on or about October 3, 1994 as a patrol officer.
3. On a continuing and ongoing basis Respondent discriminated against me based on my gender and retaliated against me in the terms and conditions of

---

[1] Franklin Park's motion also requests, [*3] more generally, the dismissal of "any other claim for damages under a sexual harassment and hostile work environment theory." Def.'s Mot. at 1. Although Count II, which asserts a claim for retaliation, contains mention of such harassment, it is mentioned only as a form of retaliation, not as a separate claim for sexual harassment. The court therefore need not consider defendant's present motion with respect to Count II.

[2] Although Hill does not say so explicitly, it appears that Hill intended to base Count I on charge No. 440-2006-07366, as the central allegation in both that charge and Count I is sex [*5] discrimination.

---

[3] For example, Hill alleges that in September 2006, Wolfe required Hill to provide detailed explanations of her travel time to the school from the department. Hill also alleges that around the same time, defendants made her travel in an unmarked car rather than a squad car, which, she further alleges, constituted an "officer safety issue." Pl.'s Compl. P 80.

2008 U.S. Dist. LEXIS 83611, *6

my employment.

4. I complained to Respondent's management about the discriminatory conduct. Respondent did nothing to stop it. In fact, male supervisors participated in the discriminatory conduct and retaliation.

5. I filed a charge of sex discrimination with the [EEOC] against Respondent on June 30, 2006, and a charge of retaliation on March 6, 2007. I also filed a complaint in Federal Court on August 2, 2007 (Case No. 07-CV-4335).

6. Since the filing of my EEOC Charges and my Federal lawsuit, I have been subjected to ongoing and continuing acts of retaliation, including but not limited to receiving a one (1) day suspension and other unwarranted disciplinary actions.

7. The respondent has violated Title VII [by] engaging in gender discrimination and retaliating against those who report the conduct, including myself.

Pl.'s Resp., Ex. 2 (Dkt. No. 109-3), at 2. Hill has not yet indicated to the court that she has received a right-to-sue letter [*7] regarding her amended charge.

On August 2, 2007, Hill filed her complaint, alleging that she was subjected to sex discrimination and sexual harassment at the Franklin Park police department on numerous occasions. Hill alleges that between May 19, 2006 and June 30, 2006, several incidents of discrimination occurred at the Franklin Park police department. First, on or about May 18, 2006, Sergeant Cascio and defendant Witz, two superior officers, did not allow Hill to work an overtime shift because she could not start at the appointed time but told a male co-worker that he could work the overtime shift even though he also could not start at the appointed time. Second, on or about June 20, 2006, defendant Wolfe, a superior officer, rescinded Hill's stipend pay. Third, on June 24, 2006, defendants (not specifically named) bypassed Hill for overtime and instead chose another officer who was not an investigator and who had less seniority. Fourth, on or about June 28, 2006, defendants (again, not specifically named) reassigned Hill to an afternoon shift in the Patrol Division, which meant she would no longer receive a certain stipend associated with her prior position as Investigator, and Wolfe [*8] threatened Hill that she might have to pay back previously-earned stipends.

Additionally, some of the incidents of sexual harassment that Hill alleges in her complaint occurred on unspecified dates. For example, Hill alleges that on an

unspecified date, several unnamed co-workers refused to turn off a pornographic video in her presence and the then-Chief of police failed to reprimand her co-workers for their conduct.

## STANDARD

After a complaint and answer have been filed, a party can move under *Rule 12(c)* for a judgment on the pleadings, which the court reviews under the same standard as it does for motions to dismiss. *Pisciotta v. Old. Nat'l Bancorp, 499 F.3d 629, 633 (7th Cir. 2007).* That standard, recently modified by the Supreme Court in *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-69, 167 L. Ed. 2d 929 (2007)* and clarified in *Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007),* now requires a complaint to provide notice of the claim and the grounds on which it rests and also to contain sufficient allegations, based on more than speculation, to state a claim for relief that is plausible on its face. *St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 625 (7th Cir. 2007)* [*9] (citing *Bell Atlantic, 127 S. Ct. at 1974*); *EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776 (7th Cir. 2007)* (citing *Bell Atlantic, 127 S. Ct. at 1964-65*). The court must still accept as true the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. *St. John's, 502 F.3d at 625.*

As the title of the rule suggests, a court may rule on a *Rule 12(c)* motion for judgment on the pleadings based on a review of the pleadings alone. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998).* The pleadings include the complaint, the answer, and any written instruments attached as exhibits, such as affidavits, letters, contracts, and loan documentation. *Id. at 452-53.* In ruling on a motion for judgment on the pleadings, "the district court may take into consideration documents incorporated by reference to the pleadings" and "may also take judicial notice of matters of public record." *United States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991).* If the court considers matters outside of the pleadings, the court should convert the motion for judgment on the pleadings into a motion for summary judgment. *N. Ind. Gun & Outdoor Shows, 163 F.3d at 453 n.5.*

## ANALYSIS

2008 U.S. Dist. LEXIS 83611, *9

Franklin  **[*10]** Park argues that Hill's sexual harassment claim in Count I is not within the scope of EEOC charge No. 440-2006-07366. Generally, a Title VII plaintiff cannot plead claims that were not included in her EEOC charge. *Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)* (citing *Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974))*. This charge requirement "serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion . . . and of giving the employer some warning of the conduct about which the employee is aggrieved." *Id. at 500* (citations omitted). Allowing a complaint to encompass allegations outside the scope of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge. *Id.*

Nonetheless, because EEOC charges are generally completed by laypersons rather than lawyers, "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in his complaint." *Id.* A plaintiff may pursue a claim not explicitly included in her **[*11]** EEOC charge if her allegations fall within the scope of the allegations contained in her EEOC charge. *Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996)*. To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge, the court considers whether they are "like or reasonably related to" those contained in the EEOC charge. *Id.* If they are, the court then considers whether the current allegations reasonably could have been developed from the EEOC's investigation of the charges before it. *Id.*

Franklin Park argues that Hill's claim of sexual harassment in Count I should be dismissed because Hill failed to allege any incidents of sexual harassment in EEOC charge No. 440-2006-07366 and, therefore, cannot raise such allegation in her complaint. The Seventh Circuit has stated that, "[o]rdinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination." *Cheek v. W. & S. Life Ins., 31 F.3d at 503*. The EEOC defines sexual harassment as follows:

Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when **[*12]** (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used

as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

*29 C.F.R. § 1604.11(a)*; *see also* *Cheek v. W. & S. Life Ins., 31 F.3d at 504*. Franklin Park contends that Hill's EEOC charge is devoid of any allegations pertaining to conduct "of a sexual nature."

As Hill correctly points out in her response, however, sexual harassment in violation of Title VII does not need to be "verbal or physical conduct of a sexual nature" but, rather, can be harassment based on hostility to the presence of women in the workplace. The Supreme Court has explained that

harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by **[*13]** another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace.

*Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)*; *see also* *Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 788 (7th Cir. 2007)* ("Although sexual harassment is usually thought of in terms of sexual demands, it can include employer action based on [sex] but having nothing to do with sexuality.").

Franklin Park further argues that the allegations in Hill's complaint are not like or reasonably related to her EEOC charge. Rather, Franklin Park contends, "Plaintiff's EEOC charge alleges only that she was 'discriminated against based on [her] sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended." Def.'s Mot. at 5 (quoting Pl.'s Compl., Ex. A). In fact, Hill's EEOC charge includes additional allegations of greater specificity. It states, for example, that "[o]n June 19, 2006, Respondent informed me that I would no longer receive specialty pay for my position and denied it to me retroactively from May 2004 to May 2005" and "[o]n June 24, 2006 and again on or about June 26, 2006, instead **[*14]** of calling me, Respondent called in a less senior officer to work overtime to assist in an investigation." Pl.'s Compl., Ex. A.

Nevertheless, it is clear that Hill's claim of sexual

*harassment* is not within the *scope* of *charge* No. 440-2006-07366, whether considered in its original form or as amended. [4] In *Torriero v. Olin Corp., 684 F. Supp. 1165 (S.D.N.Y. 1988)*, the court was faced with a similar situation where the plaintiff contended that certain instances of sex discrimination asserted in her EEOC charge [5] also constituted sexual harassment or were like and reasonably related to acts of sexual harassment. *Id. at 1170*. The court concluded that "[g]iven the nature of her charge before the EEOC--focusing on allegations of sexual discrimination in promotion, transfer and termination--the alleged sexual harassment [raised in plaintiff's complaint but not her EEOC charge] would not likely have been revealed absent a specific complaint by plaintiff. Having failed to raise such charge before the EEOC, plaintiff may not now raise her claim of sexual harassment." *Id.*

When faced with facts similar to those in this case, the Seventh Circuit has likewise affirmed a district court's finding that the plaintiff's claim for sexual harassment was not within the scope of her EEOC charge. In *Cheek v. Western & Southern Life Insurance Co., 31 F.3d 497*, for example, the court considered an EEOC charge alleging that the plaintiff's manager had "constantly intimidated" plaintiff and required her to pay the insurance premiums of her clients, but that her male co-workers were not subjected to such conditions. *Id. at 499*. Relying on *Torriero* and other similar precedents, the Seventh Circuit concluded that the sexual harassment claim the plaintiff made in her complaint was not within the scope of her EEOC charge. *Cheek v. W. & S. Life, 31 F.3d at 504*.

Like the EEOC charges at issue in *Western & Southern* and *Torriero*, Hill's EEOC charge [*16] alleges what appear to be instances only of sex discrimination rather than sexual harassment: (1) allowing a male co-worker, but not Hill, to skirt a rule; (2) terminating her "specialty pay"; (3) giving overtime to a male co-worker with less

seniority, and (4) reassigning her to a lesser position. [6]

In response to Franklin Park's 12(c) motion, Hill makes several arguments--all of which are ultimately unpersuasive--as to why her sexual *harassment* claim is within the *scope* of EEOC *charge* No. 440-2006-07366. First, Hill argues that "[t]he allegations in Plaintiff's complaint are clearly allegations that Plaintiff was discriminated against regarding the terms and conditions of her employment, which are consistent with [*17] her EEOC charges." Pl.'s Resp. at 7. Even if this contention is accepted as true, it is immaterial, because

> to allow litigants to expand an EEOC charge to include virtually any type of discrimination simply by including the phrase "terms and conditions of employment" would frustrate Title VII's policy that plaintiffs should not have unrestrained ability to litigate allegations of discrimination that are neither contained in the EEOC charge nor investigated by the EEOC.

*Baltzer v. City of Sun Prairie/Police Dep't, 725 F. Supp. 1008, 1019 (W.D. Wis. 1989)* (quoting *Pritchett v. Gen. Motors Corp., 650 F. Supp. 758, 762 (D. Md. 1986)*).

Furthermore, because Hill has failed to show that her claim of sexual harassment is like or reasonably related to the facts she enumerated in her EEOC charge, it is unnecessary to inquire into whether an EEOC investigation into Hill's charges would have discovered the grounds for that claim. *See Cheek v. W. & S. Life, 31 F.3d 497, 500* (finding that the "second part of the test" need not be applied "because [plaintiff] fails to satisfy the first part of the test"). Nevertheless, even if the court did conduct such an inquiry, Hill would not satisfy the second [*18] part of the test for the following reasons.

Hill relies on *Geist v. Glenkirk, No. 01 C 0700, 2001 U.S. Dist. LEXIS 17366, 2001 WL 1268574 (N.D. Ill. Oct. 23, 2001)*, to argue that an EEOC investigation of her charge would have discovered evidence of the sexual harassment she alleges in her complaint. In

---

[4] In any event, the Seventh Circuit has noted that an amendment to an EEOC charge can only "clarify or amplify" allegations in [*15] the original charge. *Cheek v. W. & S. Life Ins., 31 F.3d at 505*.

[5] In her EEOC charge, plaintiff Torriero alleged that "because of her sex, plaintiff's telephone calls and times of arrival to work were monitored . . . , that she was denied a transfer or promotion, and that she was finally placed on probation and terminated." *Id. at 1170*.

[6] It is also worth noting that Hill's EEOC charge fails to make any reference to the general work environment at the Franklin Park police department and does not include facts suggesting harassment of women other than Hill. *See Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 753 (E.D. Va. 1991)* (finding that a claim of sexual harassment was not within scope of an EEOC charge that did not allege either any harassment in the general work environment or harassment of other women).

*Geist,* the plaintiff alleged in her EEOC charge that a male co-worker had "physically intimidated" her as well as other co-workers. *2001 U.S. Dist. LEXIS 17366, [WL] at *5.* The court held that such allegations were reasonably related to those in her complaint, which "allege[d] a hostile work environment based on gender discrimination and specifically allege[d] that the same co-worker physically intimidated her." *Id.* The allegations in Hill's EEOC charge, by contrast, concern sex discrimination only and provide no indication that she was subjected to physical intimidation, a hostile work environment, or any other sexual harassment.

Hill also cites *Juszczak v. Blommer Chocolate Co., No. 97 C 9000, 1999 U.S. Dist. LEXIS 17230, 1999 WL 1011954 (N.D. Ill. Sept. 30, 1999),* where the court found that the plaintiff Juszczak's hostile environment claim was reasonably related to the disparate treatment and retaliation allegations in his EEOC charge because "Juszczak explicitly claims **[*19]** that the reason Blommer gives for firing him is pretextual" and "[g]athering evidence of pretext in this case would have likely led investigators to the various incidents of harassment Juszczak claims he endured over the years." *P1999 U.S. Dist. LEXIS 17230, [WL] at *8.*

In Hill's case, unlike *Juszczak,* there is nothing like an allegation of pretext that would lead to a deeper or expanded inquiry. The EEOC would have focused on the instances of sex discrimination described in Hill's EEOC charge and likely would not have discovered the separate instances of harassment that she later alleged in her complaint.

Finally, Hill argues that Franklin Park actually interpreted her EEOC charge as asserting sexual harassment and that the fact that Franklin Park did so is sufficient to conclude that her claim of sexual ***harassment*** is within the ***scope*** of the ***charge.*** As Hill points out, one of the purposes of an EEOC charge is to put defendants on notice of the allegations against them. *Cheek v. W. & S. Life Ins., 31 F.3d at 500.* Hill suggests that as long as this purpose is satisfied with regard to her sexual ***harassment*** claim, that claim is within the ***scope*** of the ***charge.*** Hill contends that Franklin Park demonstrated that it was "on **[*20]** notice" regarding her sexual harassment claims when it submitted a position statement to the EEOC stating,

> The Department has a General Order regarding sexual and other unlawful harassment. That Order requires any employee to notify the Department of any incident that he/she believes constitutes unlawful harassment. The purpose of the Order is to promptly communicate such information to the Department and allow the Department an opportunity to investigate and address any such harassment.

Pl.'s Resp. at 9.

In reply, Franklin Park argues that the position statement does not show that it was on notice regarding Hill's sexual harassment claim. Indeed, as Franklin Park points out, the position statement quoted by Hill was not a response to the EEOC charge in question, No. 440-2006-07366. Rather, as the subject caption of the position statement makes clear, it was prepared in response to Hill's later EEOC charge against Franklin Park alleging retaliation, No. 440-2007-03535. Pl.'s Resp., Ex. C, at 4. The passage Hill cites thus has little bearing on whether a claim of sexual ***harassment*** is within the ***scope*** of ***charge*** No. 440-2006-07366. Furthermore, none of Franklin Park's position statements **[*21]** in response to charge No. 440-2006-07366 evince an awareness of any sexual harassment charge. *See* Def.'s Reply, Exs. C, D.

## CONCLUSION AND ORDER

For the reasons discussed above, Franklin Park's motion for judgment on the pleadings [# 103] is granted. To the extent that Count I of Hill's complaint asserts claims for sexual harassment or hostile work environment, such claims are dismissed with prejudice. Any other claims asserted in Count I are not affected by this order.

Dated: September 5, 2008

Enter: /s/ Joan Humphrey Lefkow

JOAN HUMPHREY LEFKOW

United States District Judge

---

**End of Document**



**User Name:** James J. Convery
**Date and Time:** Thursday, July 23, 2020 8:37:00 AM CDT
**Job Number:** 121768607

## Document (1)

1. _Marliere v. Village of Woodridge, 1997 U.S. Dist. LEXIS 4379_
   **Client/Matter:** 1000
   **Search Terms:** (scope w/3 charge) w/7 harassment
   **Search Type:** Terms and Connectors
   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | Cases | Sources: IL,Federal; Cases |

**A** Neutral

As of: July 23, 2020 1:37 PM Z

## *Marliere v. Village of Woodridge*

United States District Court for the Northern District of Illinois, Eastern Division

March 31, 1997, Decided ; April 7, 1997, DOCKETED

No. 96 C 816

**Reporter**
1997 U.S. Dist. LEXIS 4379 *; 1997 WL 177841

PATRICIA MARLIERE, Plaintiff, v. VILLAGE OF WOODRIDGE, STEVEN LIST, GARY RINI, LEN NOTZ, LORRAINE KERN, TAMMY LINDBLOOM, WILLIAM MURPHY, and KATHLEEN RUSH, Defendant.

**Disposition: [*1]** Defendants' motion GRANTED in part and DENIED in part.

## Core Terms

sexual, harassment, notice, custom, sex, disparate, discriminatory, deprivation

## Case Summary

### Procedural Posture

Plaintiff employee filed a complaint against defendant employer, the village, and defendant village officials. She alleged that her employment was constructively terminated. She asserted causes of action for sexual harassment under Title VII and for violations of *42 U.S.C.S. § 1983* against the employer. She also alleged that the village officials individually violated *§ 1983*. The employer and the village officials filed a motion to dismiss.

### Overview

The employee worked as a telecommunications officer. She alleged that she was subjected to a hostile and intimidating work environment and discrimination on the basis of her sex. She maintained that the harassment and discrimination threatened her mental health to the point that she had to resign. She filed a charge with the Equal Employment Opportunity Commission (EEOC). The charge stated that she was routinely subjected to sexually discriminatory conduct. After receipt of a right to sue letter, the employee filed suit. The employer posited that the Title VII sexual harassment claim was outside the scope of the EEOC charge. The court agreed that sexual **harassment** was outside the **scope** of the **charge**, which only alleged acts of sex discrimination. Thus, the court concluded that the employee was unable to pursue a sexual harassment claim. The employer next argued that municipal liability under *42 U.S.C.S. § 1983* required heightened pleading requirements. The court disagreed and determined that the employee's allegations satisfied notice pleading. Similarly, the employee met the notice pleading requirements with respect to her individual *§ 1983* claims against the village officials.

### Outcome

The court granted the employer's motion to dismiss the employee's sexual harassment claim. The court denied the employer's motion to dismiss the employee's *§ 1983* claim. Likewise, the court denied the village officials' motion to dismiss the employee's *§ 1983* claims.

James J. Convery

1997 U.S. Dist. LEXIS 4379, *1

# LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > General Overview

## *HN1*[⤓] Motions to Dismiss, Failure to State Claim

The purpose of a *Fed. R. Civ. P. 12(b)(6)* motion is to test the legal sufficiency of a complaint. In order to survive a motion to dismiss, a complaint must allege sufficient facts to outline a cause of action. The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. A court must accept as true all well pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. However, a court need not accept as true conclusory legal allegations. When evaluating the legal sufficiency of the plaintiff's factual allegations, courts are held to a strict standard. A motion to dismiss may be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle her to relief.

Criminal Law & Procedure > ... > Crimes Against Persons > Coercion & Harassment > Elements

Labor & Employment Law > ... > US Equal Employment Opportunity Commission > Civil Actions > Notice to Employers

Labor & Employment Law > Discrimination > Disparate Treatment > Exhaustion of Remedies

Labor & Employment Law > ... > Harassment > Sexual Harassment > General Overview

Business & Corporate Compliance > ... > Harassment > Sexual Harassment > Civil Enforcement Actions

Labor & Employment Law > ... > Sexual Harassment > Scope & Definitions > General Overview

Labor & Employment Law > ... > Sexual Harassment > Scope & Definitions > Sexual Harassment

Labor & Employment Law > ... > Harassment > Sexual Harassment > Exhaustion of Remedies

## *HN2*[⤓] Coercion & Harassment, Elements

An employee may pursue a sexual harassment claim not explicitly included in the Equal Employment Opportunity Commission (EEOC) complaint if her allegations fall within the scope of the charges contained in the EEOC complaint. The reason behind the requirement that allegations not contained in an EEOC charge cannot be contained in the district court complaint is that the employer must have notice of the charge, and the EEOC must have the opportunity to investigate and conciliate the charge, in order to attempt to obtain voluntary compliance with Title VII. A sexual harassment claim generally is not like or related to a disparate treatment charge based on sex discrimination. Simply, the type of conduct amounting to sexual harassment is entirely different than the type of conduct that may amount to sex discrimination. The former conduct necessarily is of a sexual or lewd nature; the latter conduct, typically, is not.

Civil Rights Law > ... > Immunity From Liability > Local Officials > General Overview

Governments > Local Governments > Claims By & Against

Governments > Legislation > Statutory Remedies & Rights

## *HN3*[⤓] Immunity From Liability, Local Officials

In order to state a *42 U.S.C.S. § 1983* claim against a municipality, a plaintiff must allege (1) that she experienced deprivation of a constitutional or federal statutory right, and (2) that the alleged deprivation is caused by defendants acting in accordance with a municipal policy or custom.

1997 U.S. Dist. LEXIS 4379, *1

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Rights Law > ... > Immunity From Liability > Local Officials > General Overview

Governments > Local Governments > Claims By & Against

Civil Procedure > ... > Pleadings > Heightened Pleading Requirements > General Overview

*HN4*[⬇] **Complaints, Requirements for Complaint**

The United States Supreme Court rejects heightened pleading standards for *42 U.S.C.S. § 1983* claims against municipalities, ruling that a plaintiff must only satisfy the usual notice pleading standard established by the Federal Rules of Civil Procedure. The court specifically rejects the argument that more than a single incident must be pleaded. The plaintiff need only plead that a custom or policy existed. In short, the employee need not plead facts; he can plead conclusions.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Rights Law > ... > Immunity From Liability > Local Officials > General Overview

Civil Procedure > Pleading & Practice > Pleadings > General Overview

*HN5*[⬇] **Complaints, Requirements for Complaint**

Notice pleading essentially requires that the allegations direct a defendant to the factual cause of a plaintiff's alleged injury. The absence of any facts at all to support the plaintiff's claim renders the allegations mere legal conclusions of *42 U.S.C.S. § 1983* liability devoid of any well-pleaded facts. Plainly, notice pleading does not set a very high standard.

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Rights Law > Protection of Rights > Section

1983 Actions > Scope

*HN6*[⬇] **Complaints, Requirements for Complaint**

In *42 U.S.C.S. § 1983* claims against individual defendants, a plaintiff must plead that a state actor purposefully discriminates against her because of her identification with a particular (presumably historically disadvantaged) group.

**Counsel:** For PATRICIA MARLIERE, plaintiff: Richard Benson Rogich, Timothy M. Richardson, Spyro J. Demakis, Richard B. Rogich & Associates, Ltd., Chicago, IL.

For VILLAGE OF WOODRIDGE, defendant: Patricia L. Argentati, Norton, Mancini, Argentati, Weiler & DeAno, Wheaton, IL. FOR STEVEN LIST, defendant: Patricia L. Argentati, (See above). For GARY RINI, defendant: Patricia L. Argentati, (See above). For LEN NOTZ, defendant: Patricia L. Argentati, (See above). For LORRAINE KERN, defendant: Arthur Stephen Bresnahan, Kenneth Thomas Garvey, Bresnahan & Garvey, Chicago, IL. For TAMMY LINDBLOOM, defendant: Arthur Stephen Bresnahan, (See above), Kenneth Thomas Garvey, (See above). For WILLIAM MURPHY, defendant: Patricia L. Argentati, (See above). For KATHLEEN RUSH, defendant: Patricia L. Argentati, (See above).

**Judges:** JOHN A. NORDBERG, United States District Judge

**Opinion by:** JOHN A. NORDBERG

# Opinion

### *MEMORANDUM OPINION AND ORDER*

Patricia Marliere ("Plaintiff") has sued her former employer, the Village of Woodridge ("Woodridge"), and

the individual defendants, all officials of Woodridge, for violations of 42 U.S.C. § 1983 and Title VII, 28 [*2] U.S.C. § 2000(e), et seq. Plaintiff's Complaint alleges three counts: (I) an action under Title VII for sex discrimination; (II) an action under § 1983 for deprivation of Plaintiff's Fourteenth Amendment right to be free of sex discrimination, against only Woodridge; and (III) an action under § 1983 for deprivation of Plaintiff's Fourteenth Amendment right to be free of sex discrimination, against each individual Defendant. Before the Court are Defendants' Motions to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6).

## I. Background

For the purposes of this motion, the Court accepts as true all well-pleaded factual allegations in Plaintiff's complaint and draws all reasonable inferences in favor of the Plaintiff. The Court finds Plaintiff sufficiently alleges the following.

From April 10, 1994 to August 23, 1994, Woodridge, a municipality, employed Plaintiff, a female, as a telecommunications officer. On August 23, 1994, Plaintiff resigned from her position; Plaintiff alleges the discharge amounted to a constructive discharge. During the relevant period, Defendant William Murphy ("Murphy") was the mayor of Woodridge, and Defendant Steven List ("List"), now Chief of [*3] Police of Woodridge, was Plaintiff's supervisor or immediate supervisor. Additionally Defendants Gary Rini ("Rini"), Len Notz ("Notz"), Tammy Lindbloom ("Lindbloom"), and Lorraine Kern ("Kern") held supervisory positions in the Woodridge police department, each supervising Plaintiff during her entire tenure at Woodridge. Defendant Kathleen Rush is the acting Assistant Administrator or Personnel Director for Woodridge and the Woodridge police department, with responsibility for coordinating Woodridge's sexual harassment policy in 1994.

During the term of her employment, plaintiff alleges she was "regularly subjected to a continuous policy, custom and practice of disparate treatment and sexual discrimination for female employees, in the terms, conditions, and privileges of their employment, and unwelcome conduct of a sexual and gender based nature, all of which created a hostile and intimidating work environment." (Comp. P 15.) Plaintiff further alleges she was "regularly subjected to discriminatory treatment relating to her sex. This was a result of a pervasive custom or policy of sex discrimination. . . ." (Comp. P17.)

More specifically, Plaintiff alleges she suffered differential [*4] treatment, disparate criticism and disparate supervision while employed with the police department. Male telecommunications officers were treated differently than Plaintiff for similar mistakes and were given preferential treatment in the scheduling of their working hours. Furthermore, Notz and Rini ordered Plaintiff to attend regular meetings after she worked her shift; males employees were not required to attend meetings after their shifts. Lindbloom and Kern also carried out "other acts of harassment and discriminatory treatment" against Plaintiff and other female employees.

Plaintiff reported the harassment and sexual discrimination to List, who, with the acquiescence of Murphy, allegedly exercised control over the customs, policies, and practices of the police department. On information and belief, Plaintiff alleges prior reports of harassment and sex discrimination were in the possession of List, Rini, Rush, and/or Murphy, all of whom were "deliberately indifferent" to the alleged misbehavior and failed to remedy the situation or take any disciplinary action.

Plaintiff alleges the harassment and discrimination was sufficiently severe and persistent to seriously affect Plaintiff's [*5] mental well-being so that her resignation amounted to a constructive discharge.

On April 11, 1995, Plaintiff filed a charge of discrimination against Defendants with the Equal Opportunity Employment Commission ("EEOC") and the Illinois Department of Human Rights. The charge stated, in relevant part, that Plaintiff was "regularly subjected to a policy or practice of continuous [sic] sexually discriminatory conduct and disparate gender based [sic] treatment exercised by [Defendants and others.]" The charge further states, "Such gender biased practices included, but were not limited to, differential treatment for similarly situated males for work evaluations, work scheduling, scheduling of meetings, work recognition, and in the manner one's work was corrected."

On November 21, 1995 Plaintiff received a Notice of Right to Sue letter from the EEOC. Plaintiff filed this action on February 18, 1996.

## II. Standard

HN1[↑] The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. See Adams v. Cavanagh Communities Corp., 847 F. Supp. 1390, 1396 (N.D. Ill. 1994). In order to survive a motion to dismiss, a

complaint must allege sufficient facts to outline **[*6]** a cause of action. *Davis v. Frapolly, 747 F. Supp. 451 (N.D. Ill. 1989)*. The complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co., 758 F.2d 203, 207 (7th Cir. 1985)*.

The Court must accept as true all well pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1324 (7th Cir. 1993)*. However, the Court need not accept as true conclusory legal allegations. *Baxter v. Vigo County School Corp., 26 F.3d 728, 730 (7th Cir. 1994)*. When evaluating the legal sufficiency of a plaintiff's factual allegations, courts are held to a strict standard. A motion to dismiss may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*; *Cushing v. City of Chicago, [*7] 3 F.3d 1156, 1159 (7th Cir. 1994)*.

### III. Analysis

The Defendants bring motions to dismiss with respect to each of Plaintiff's Counts.

### A. Count I: Title VII Claim

To the extent that Plaintiff's Title VII claim seeks to state a claim for sexual harassment, Defendant Woodridge contends the claim should be dismissed as such a claim is outside of the scope of the EEOC charge. Plaintiff, however, contends a sexual harassment claim may be fairly read into the EEOC charge or, alternatively, it falls within the scope of the charge.

Examining the EEOC charge, the Court cannot agree with Plaintiff that a sexual harassment charge may be reasonably inferred. The allegations do not state or imply any wrong-doing of a sexual nature. Instead, each of the alleged acts only implicates sex discrimination. Accordingly, the Court finds the EEOC charge does not contain an express charge of sexual harassment.

However, *HN2*[↑] Plaintiff may still pursue a sexual harassment claim not explicitly included in the EEOC complaint if her allegations "fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996)*; *Harper v. Godfrey [*8] Co., 45 F.3d 143, 147-48 (7th Cir. 1995)*. The current allegations fall within the scope of the earlier charges if (1) they are "like or reasonably related to" those contained in the EEOC complaint, and (2) the current claim reasonably could have developed from the EEOC's investigation of the charges before it. *Cheek, 97 F.3d at 202*. "The reason behind the requirement that allegations not contained in an EEOC charge cannot be contained in the [district court] complaint is that the defendant must have notice of the charge, and the EEOC must have the opportunity to investigate and conciliate the charge, in order to attempt to obtain voluntary compliance with Title VII." *Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989)*.

As the *Cheek* court found, a sexual harassment claim generally is not "like or related to" a disparate treatment charge based on sex discrimination. *Cheek, 97 F.3d at 202-03*. Simply, the type of conduct amounting to sexual harassment is entirely different than the type of conduct that may amount to sex discrimination. The former conduct necessarily is of a sexual or lewd nature; the latter conduct, typically, is not. [1] With this **[*9]** distinction in mind, the Count finds Plaintiff's EEOC charge is devoid of any allegation alleging conduct relating to sexual harassment.

Accordingly, the Court finds a Title VII claim based on sexual harassment is outside of the scope of the EEOC charge and, thus, Plaintiff may not state a claim for sexual harassment under Title VII.

### B. Count II: § 1983 Claim Against Woodridge

Defendant Woodridge contends Plaintiff fails to state a claim pursuant to § 1983 because Plaintiff failed to allege a "specific pattern or series of incidents" to support Plaintiff's allegation that the **[*10]** putative deprivation resulted from a custom or policy of

---

[1] The Court notes, however, that conduct amounting to sexual harassment also may support a sex discrimination claim. Accordingly, a sex discrimination charge might fall within the scope of an EEOC charge alleging only sexual harassment. However, the opposite question is presented in this case: whether a sexual harassment charge falls within the scope of a sex discrimination charge. The Court addresses only the latter question.

Woodridge.

HN3[↑] In order to state a § 1983 claim against a municipality, Plaintiff must allege (1) that she experienced deprivation of a constitutional or federal statutory right, and (2) that the alleged deprivation was caused by government officers acting in accordance with a municipal policy or custom. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-01, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). In order to satisfy this second element, Woodridge argues, Plaintiff must allege more than a single incident resulting from the purported custom or policy. [2]

Although older Seventh Circuit cases support Woodridge's position, see, e.g., Rodgers v. Lincoln Towing Service, Inc. 771 F.2d 194, 202 (1985), more recent Seventh Circuit cases and, most importantly, Supreme Court cases do not. In Leatherman [*11] v. Tarrant County Narcotics Unit, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993), HN4[↑] the Supreme Court rejected heightened pleading standards for § 1983 claims against municipalities, ruling that a plaintiff must only satisfy the usual "notice pleading" standard established by the Federal Rules of Civil Procedure. 113 S. Ct. at 1162; see also, Sledd v. Linsday, 102 F.3d 282, 288 (7th Cir. 1996). The Court specifically rejected the argument that more than a single incident must be pleaded. Id. Plaintiff need only plead that a custom or policy existed. In short, a plaintiff "need not plead facts; he can plead conclusions." Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995).

While Plaintiff need not plead with specificity multiple incidents attributable to a custom or policy, Plaintiff' allegations must still satisfy the requirements of notice pleading. HN5[↑] Notice pleading essentially requires that the allegations "direct the defendant to the factual cause of the plaintiff's alleged injury." Holder v. Welborn, 60 F.3d 381, 383 (7th Cir. 1995); Doherty v. City of Chicago, 75 F.3d 318, 326 (7th Cir. 1996) ("must be sufficient facts pleaded to allow the court [*12] and the defendant to understand the gravamen of the plaintiff's complaint.") Illustrating how a plaintiff may fail to satisfy this standard, the Holder court stated, "The absence of any facts at all to support plaintiff's claim renders the allegations mere legal conclusions of section 1983 liability devoid of any well-pleaded facts." Plainly, notice

pleading does not set a very high standard.

The Court finds Plaintiff's allegations are sufficient to satisfy notice pleading. In addition to her broad-stroke allegations of a "policy, custom, or practice of disparate treatment and sexual discrimination," (Complaint P 15), Plaintiff more specifically alleges she "received differential treatment, disparate criticism, and/or supervision … from defendants Len Notz and Gary Rini." Further, she alleges she was forced to attend meetings male employees were not required to attend, and that male officers were given preferential treatment with respect to scheduling. The Court finds that these allegations are sufficient to put Defendant Woodridge on notice of the "factual cause" of Plaintiff's alleged injury, by informing Defendants of the types of policies or customs in question. Although [*13] Plaintiff's allegations do not tell Defendant a lot, notice pleading does not require a lot.

Accordingly, the Court denies Woodridge's motion to dismiss Count II of Plaintiff's complaint.

## C. Count III: § 1983 Claim against Individual Defendants

Lastly, Defendants contend Plaintiff insufficiently pleads discriminatory intent on the part of Defendants, an element required to sustain her underlying equal protection claim. [3] Defendants contend, "Plaintiff's conclusory deployment of naked boilerplate allegations" are insufficient to meet this requirement. Def. Mot. Dismiss Count III at P 6.

Defendants are correct that HN6[↑] Plaintiff must plead that "a state actor purposefully discriminated against [her] because of [her] identification with a particular (presumably [*14] historically disadvantaged) group." Sherwin Manor Nursing Center, Inc. v. McAuliffe, 37 F.3d 1216, 1220 (7th Cir. 1994). However, Defendants are not correct that Plaintiff's allegations are insufficient. As shown above, Plaintiff need only satisfy the rudimentary requirements of notice pleading. Plaintiff clearly alleges each Defendant purposefully discriminated against her based on her sex. While offering no facts in support of her claim of discriminatory intent, she does allege the necessary conclusion. Under

---

[2] Essentially, Defendants are arguing that Plaintiff must satisfy a "heightened pleading standard" in her § 1983 claim against Woodridge.

---

[3] Defendants also contend Plaintiff's "sparse" allegations of discriminatory conduct are insufficient. Having ruled against this identical contention in the previous section, the Court finds Plaintiff's allegations are sufficient in this respect.

our notice pleading system, that is enough.

Accordingly, Defendants' motion to dismiss Count III is denied.

## III. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion with respect to Count I, thereby dismissing with prejudice that portion of Count I claiming a cause of action under Title VII for sexual harassment. Additionally, the Court DENIES Defendants' motion with respect to Counts II and III.

**ENTER:**

**JOHN A. NORDBERG**

**United States District Judge**

**DATED:** *March 31, 1997*

---

End of Document



**User Name:** James J. Convery
**Date and Time:** Thursday, July 23, 2020 8:35:00 AM CDT
**Job Number:** 121768442

## Document (1)

1. *Rufus v. City of Chicago, 2018 U.S. Dist. LEXIS 67440*
   **Client/Matter:** 1000
   **Search Terms:** (scope w/3 charge) w/7 harassment
   **Search Type:** Terms and Connectors
   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | Cases | Sources: IL,Federal; Cases |

**A** Neutral
As of: July 23, 2020 1:35 PM Z

## *Rufus v. City of Chicago*

United States District Court for the Northern District of Illinois, Eastern Division

April 23, 2018, Decided; April 23, 2018, Filed

Case No. 17-cv-4192

**Reporter**
2018 U.S. Dist. LEXIS 67440 *; 2018 WL 1911799

JAMES RUFUS, Plaintiff, v. CITY OF CHICAGO, et al., Defendants.

**Subsequent History:** Summary judgment granted by *Rufus v. City of Chicago, 2019 U.S. Dist. LEXIS 62436 (N.D. Ill., Apr. 11, 2019)*

**Judges:** John Robert Blakey, United States District Judge.

**Opinion by:** John Robert Blakey

## Core Terms

retaliation, harassment, sexual, interview, hiring

## Opinion

**Counsel:** [*1] James Rufus, Plaintiff, Pro se, Chicago, IL.

For City of Chicago, Defendant: Rebecca Miriam Gest, LEAD ATTORNEY, The City of Chicago - Department of Law, Employment Litigation, Chicago, IL; Rena M. Honorow, LEAD ATTORNEY, City of Chicago, Law Department, Employment LItigation, Chicago, IL; Susan Margaret O'Keefe, City of Chicago Law Department, Chicago, IL.

For Elizabeth Williams, individually, Defendant: Rena M. Honorow, LEAD ATTORNEY, City of Chicago, Law Department, Employment LItigation, Chicago, IL.

For Robert May, individually, Defendant: Rebecca Miriam Gest, LEAD ATTORNEY, The City of Chicago - Department of Law, Employment Litigation, Chicago, IL; Rena M. Honorow, LEAD ATTORNEY, City of Chicago, Law Department, Employment LItigation, Chicago, IL.

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Rufus sued Defendants City of Chicago, Elizabeth Williams, and Robert May under *42 U.S.C. § 1983*, *Title VII of the Civil Rights Act*, and the *Illinois Whistleblower Act* (IWA). Plaintiff alleges that Williams refused to promote him because of his race and that May failed to stop her from engaging in such conduct. Plaintiff alleges that the City [*2] discriminated against him on the basis of race and retaliated against him for complaining about discrimination and harassment. The City and May moved to dismiss. For the reasons explained below, this Court partially grants the City's motion and grants May's motion.

**I. The Complaint's Allegations**

**A. This Case**

Plaintiff, an African-American man, previously worked for the City as a custodian at O'Hare International

Airport. [50] at 2.[1] Around mid-2015, Plaintiff complained internally about sexual harassment after Williams, a Hispanic woman, inappropriately touched him in the hallway at work. Id. Williams then subjected Plaintiff to "derogatory and racial comments." Id. Plaintiff complained again—to May—about Williams' behavior, but May failed to investigate Plaintiff's complaints or remedy the situation. Id. at 2-3.

In June or July 2016, the City posted two job openings for "Foreman of Custodial Workers" at O'Hare. Id. at 3. Plaintiff applied for the promotion, but Williams told another employee that she would not promote Plaintiff and that she would hire at least one Hispanic individual. Id. In November 2016, the City announced that it would hire the foremen based solely upon two factors: scores on an exam [*3] and seniority. Id. Despite announcing that new process, the City scheduled Plaintiff for a job interview with Williams on December 13, 2016. Id. Williams asked Plaintiff questions that—in violation of City protocol—Human Resources did not approve in advance. Id. Plaintiff later learned that Williams gave the questions to another candidate, Andrea Dennis, before her interview. Id.

From December 2016 to January 2017, Plaintiff contacted the City's Office of the Inspector General (OIG) multiple times to report potential hiring, testing, and application fraud. Id. at 4. Subsequently, management told custodial workers, including Plaintiff, to "stop calling the OIG and threatening the City with lawsuits." Id. Plaintiff says that the City refused to promote him because he reported misconduct to the OIG. Id. at 9. Although Plaintiff had six years of seniority over Dennis, Dennis got one of the available job openings. Id. at 4. Saul Soto, a Hispanic man, got the second spot. Id.

May knew about the promotion and interview process for custodians and knew that Williams, whom he supervised, made derogatory remarks to Plaintiff and "misused her position" to retaliate against Plaintiff by refusing to promote him. Id. at 6. May also [*4] knew that Williams treated Plaintiff differently because of Plaintiff's race, but May failed to prevent Williams from discriminating against Plaintiff. Id.

## B. EEOC Charge

Plaintiff filed a discrimination charge with the EEOC on December 5, 2016—about a week before his job interview with Williams. Id. at 1, 3; see also [22-1].[2] He received a right-to-sue letter in March 2017 and filed this case in June 2017. [50] at 1-2. Plaintiff's EEOC charge stated:

> I have been subjected to racial comments which have created a hostile work environment; I complained, to no avail. I also filed a prior EEOC Charge (EEOC Charge No. 440-2016-03621) alleging sexual harassment and, subsequently, I have been subjected to retaliation, including, but no [sic] limited to, harassment and passed up for promotion. I have been discriminated against because of my race, Black, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

[22-1].

## II. Legal Standard

To survive a motion to dismiss under *Rule 12(b)(6)*, a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, *Fed. R. Civ. P. 8(a)(2)*, so the defendant has "fair notice" of the claim "and the [*5] grounds upon which it rests," *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Twombly, 550 U.S. at 570*). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson, 714 F.3d at 436*.

In evaluating a complaint under *Rule 12(b)(6)*, this Court

---

[1] Plaintiff's third amended complaint [50] begins each of its five counts with paragraph 25, rendering paragraph numbers largely useless for citations, so this Court cites to page numbers instead.

---

[2] Although Plaintiff inadvertently failed to attach a copy of his EEOC charge to his third amended complaint—the current operative pleading—he attached a copy to his second amended complaint, [22-1], and the third amended complaint refers to the EEOC charge as "Exhibit A," [50] at 2. Thus, this Court may consider the EEOC charge contained in [22-1] because it is central to the complaint and the complaint refers to it. See *Williamson v. Curran, 714 F.3d 432, 436 (7th Cir. 2013)*.

accepts all well pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal, 556 U.S. at 678*. This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009)*.

## III. Analysis

### A. The City's Motion to Dismiss

The City argues that Plaintiff's race-discrimination and retaliation claims (Counts III and IV, respectively) fail because they exceed the scope of his EEOC charge. [24] at 3-6. The City also argues that Plaintiff fails to plead sufficient facts for his IWA claim (Count V). *Id.*

### 1. The Scope of Plaintiff's EEOC Charge

In Title VII cases, a plaintiff may only pursue claims that fall within the scope of the plaintiff's EEOC charge. *Ezell v. Potter, 400 F.3d 1041, 1046 (7th Cir. 2005)*. The Seventh Circuit uses a two-prong inquiry for determining whether a plaintiff's current claims, if not explicitly [*6] alleged in the EEOC charge, come within the charge's scope: (1) whether the complaint's allegations reasonably relate to the charge's allegations; and (2) if they reasonably relate, whether the current claim "reasonably could have developed from the EEOC's investigation of the charges before it." *Id.* (citing *Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996))*. Allegations reasonably relate to each other when they have a factual relationship, meaning—at a minimum—that the EEOC charge and the complaint "describe the same conduct and implicate the same individuals." *Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1118 (7th Cir. 2001)* (internal quotation marks omitted).

Plaintiff filed his EEOC charge on December 5, 2016, before his interview with Williams and thus before the City allegedly refused to promote him because of his race, [50] at 1-3, 7. The charge states that Plaintiff faced "racial comments which have created a hostile work environment," that the City passed him up for promotion because he filed a prior EEOC charge regarding sexual harassment, and that "I have been discriminated against because of my race, Black." [22-1]. Against that backdrop, Count III cannot proceed because an insufficient factual relationship exists between the EEOC charge and the allegations of Count III. *See*

*Kersting, 250 F.3d at 1118*.

Count III [*7] alleges that the City discriminated against Plaintiff by refusing to promote him because of his race. [50] at 7. But the EEOC charge contains only two race-related allegations: (1) a general allegation that the City discriminated against Plaintiff because of his race; and (2) an allegation that the City subjected Plaintiff to "racial comments which have created a hostile work environment." [22-1]. Those allegations did not provide enough specificity to allow the EEOC to investigate a charge of race-based failure to promote. *See Rush v. McDonald's Corp., 966 F.2d 1104, 1111-12 (7th Cir. 1992)* ("We hold that it will not suffice to file general charges with the EEOC"—as the plaintiff did by stating: "I believe I have been discriminated against because of my race, Black"—and then "to expect that this allegation will permit all claims of race-based discrimination in a subsequent lawsuit."); *Reynolds v. Tangherlini, 737 F.3d 1093, 1100 (7th Cir. 2013)* (Title VII claim could not proceed when the EEOC charge "failed to provide minimally adequate factual specificity" for the EEOC to have investigated the claim).

Also, Plaintiff filed his EEOC charge *before* the City allegedly failed to promote him because of his race. Normally, someone who suffers a discrete act of discrimination must file an EEOC charge "within a [*8] specified period of time *after* the challenged employment action occurs." *Adams v. City of Indianapolis, 742 F.3d 720, 730 (7th Cir. 2014)*. Failure to promote constitutes a discrete act of discrimination, as distinct from hostile environment claims that involve repeated conduct. *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)*. Here, Plaintiff filed his EEOC charge *before* the alleged failure to promote, so he failed to give the EEOC or the City notice of the wrong alleged in Count III. *See Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir. 1989)* (claim of racial **harassment** not within **scope** of EEOC **charge** that pertained to earlier time period and asserted only a discriminatory failure to promote). Consequently, this Court dismisses Count III with prejudice.

Count IV alleges that the City failed to promote Plaintiff to Foreman in retaliation for Plaintiff complaining *internally* about sexual harassment and racial discrimination. [50] at 8. Again, although Plaintiff does not specify the exact date that the City failed to promote him to Foreman, this alleged retaliation came after Plaintiff filed his EEOC charge on December 5. *See id.* at 1-3. So, although Plaintiff alleged a retaliatory failure

to promote in his EEOC charge, it is a different retaliatory failure to promote than the one he alleges in Count IV. *See* [22-1] ("I also filed a prior EEOC Charge (EEOC Charge **[*9]** No. 440-2016-03621) alleging sexual harassment and, subsequently, I have been subjected to retaliation, including, but no [sic] limited to, harassment and passed up for promotion"). Thus, the prior retaliation charge and Count IV do not reasonably relate to each other because they do not allege the same conduct. *See Kersting, 250 F.3d at 1118*. Although both allege a retaliatory failure to promote, the similarities end there. The charge and Count IV describe two separate retaliatory acts that occurred at different times and for different reasons: the former because Plaintiff filed an EEOC charge about sexual harassment, and the latter because Plaintiff complained to the OIG about hiring practices. *Compare* [22-1], *with* [50] at 8. The December 5 EEOC charge does not allege any retaliation for making internal complaints.

Also, because failure to promote constitutes a discrete act of discrimination, Plaintiff needed to file another EEOC charge *after* the City failed to promote him to Foreman. *See Adams, 742 F.3d at 730*. Plaintiff argues that an exception exists for retaliation claims that arise after a plaintiff files an EEOC charge, making it "unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation **[*10]** claim growing out of an earlier charge." [38] at 6. True in some cases, but not applicable here. As Plaintiff says, the Seventh Circuit holds that "a plaintiff who alleges retaliation for *having filed a charge with the EEOC* need not file a second EEOC charge to sue for that retaliation." *Luevano v. Wal-Mart Stores, Inc., 722 F.3d 1014, 1030 (7th Cir. 2013)* (emphasis added). But Plaintiff does not allege retaliation for having filed a charge with the EEOC; he alleges retaliation for making internal complaints. [50] at 8. Thus, Count IV does not fall within the carve-out for subsequent retaliation claims.

Plaintiff also argues that this Court should consider notes that an EEOC investigator took during a February 2017 meeting with Plaintiff; these notes allegedly detail multiple failure-to-promote claims that Plaintiff discussed with the investigator, and Plaintiff attached the notes to his response brief. [38] at 4-5. Plaintiff did not, however, attach the notes to his complaint or refer to the notes (or any meeting with investigators) in his complaint. *Rule 12(b)(6)* limits this Court to considering the complaint, documents attached to the complaint, documents central to the complaint (to which the complaint refers), and information properly subject to judicial notice. **[*11]**

*Williamson, 714 F.3d at 436*. The investigator's notes do not fit any of those categories, so this Court declines to consider them.

Even if the notes were considered, however, a federal claim may not be predicated on oral charges made to an investigator that are neither "reflected in nor reasonably related to the charge actually filed." *Vela v. Vill. of Sauk Village, 218 F.3d 661, 665 (7th Cir. 2000)*. This Court dismisses Count IV with prejudice.

## 2. Plaintiff's IWA Claim

The City argues that Count V fails because Plaintiff disclosed purportedly illegal practices to his own employer (the OIG, another City entity) instead of an outside agency. [24] at 7. Plaintiff responds that the IWA protects government employees who make disclosures to government or law-enforcement agencies, including their own employer. [38] at 10. This Court agrees. *See Milsap v. City of Chicago, No. 16-cv-4202, 2018 U.S. Dist. LEXIS 8638, 2018 WL 488270, at \*9 (N.D. Ill. Jan 19, 2018)*.

The IWA bars employers from retaliating against employees who disclose information to a government or law-enforcement agency, "where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." *740 ILCS 174/15(b)*. The IWA normally does not protect employees who merely make internal disclosures to their own employers. *See Riedlinger v. Hudson Respiratory Care, Inc., 478 F. Supp. 2d 1051, 1055 (N.D. Ill. 2007)*. But that general **[*12]** rule does not apply here, because the plain language of the statute only requires an employee "to report to a government or law enforcement agency," and thus, it does not create a catch-22 when a government or law-enforcement agency also happens to be the whistleblower's employer. *Brame v. City of North Chicago, 2011 IL App (2d) 100760, 955 N.E.2d 1269, 1272-73, 353 Ill. Dec. 458 (Ill. App. Ct. 2011)*, *appeal denied*, 962 N.E.2d 480, 356 Ill. Dec. 795 (Ill. 2011).

Thus, contrary to the City's position, municipal employees fall within the ambit of the IWA when they properly report to the OIG. *Id.* (explaining that the Illinois legislature intended to protect, for example, a police officer who reports the illegal conduct of fellow police officers to department superiors). Plaintiff, who happened to work for City government, alleges that he reported "potential hiring, testing, and application fraud"

to the OIG on multiple occasions from December 2016 to January 2017. [50] at 4. He also alleges that the City warned him to stop complaining to the OIG, and that the City refused to promote him as a result of his complaints. *Id.* at 9. At this stage, those allegations state a viable IWA claim. *See Brame, 955 N.E.2d at 1272-73*.

Oddly, the City perfunctorily dismisses *Brame* as "an Illinois state court case this Court should not consider." [44] at 7. The IWA constitutes substantive Illinois law; in **[*13]** exercising supplemental jurisdiction over Plaintiff's IWA claim, this Court is "bound by state court decisions as well as state statutes." *Hanna v. Plumer, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)* (citing *Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938))*. Thus, this Court follows the well-reasoned decision in *Brame*, and denies the City's motion to dismiss Count V.

## B. May's Motion to Dismiss

May argues that the *§ 1983* claim against him (Count II) fails because Plaintiff alleges only vicarious liability rather than the personal involvement necessary under *§ 1983*. [57] at 3-6. May also argues that qualified immunity protects him because Plaintiff fails to allege any clearly established constitutional or statutory right that May violated. *Id.* at 7. Plaintiff, now representing himself, filed a response that simply restates the complaint's factual allegations and lacks any legal arguments. [72].

In responding to a motion to dismiss, "the non-moving party must proffer some legal basis to support his cause of action." *Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010)* (internal quotation marks omitted). When a motion provides plausible grounds for dismissing a claim and the plaintiff fails to make any legal argument in response, the plaintiff waives that claim. *Lekas v. Briley, 405 F.3d 602, 615 (7th Cir. 2005)*. This rule applies to pro se plaintiffs too. *See id.*

Plaintiff waived his claim against May by failing to **[*14]** raise any legal arguments in response to May's plausible arguments for dismissal. *See id.* Thus, this Court dismisses Count II. *See Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999)* (explaining that the adversarial justice system dictates that, when a *Rule 12(b)(6)* motion gives "plausible reasons for dismissing a complaint," a court will not "do the plaintiff's research and try to discover whether there might be something to say against the defendant's

reasoning").

## IV. Conclusion

This Court partially grants the City's motion to dismiss [24]. This Court grants the City's motion with prejudice as to Counts III and IV, but denies it as to Count V. This Court grants May's motion to dismiss [57] and dismisses Count II. Count I remains because Williams did not move to dismiss it. All dates and deadlines stand.

Dated: April 23, 2018

Entered:

/s/ John Robert Blakey

John Robert Blakey

United States District Judge

**End of Document**