IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| ARMEND A.TRNAVA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 20 CV 928 |
| CHICAGO CUT STEAKHOUSE, LLC, an Illinois | ) |
| Limited Liability Company, | ) |
| | ) |
| CHICAGO RESTAURANT MANAGEMENT, | ) |
| LLC; an Illinois Limited Liability Company; | ) |
| | ) |
| THE LOCAL LLC, an Illinois Limited Liability | ) |
| Company, d/b/a SOUTHERN CUT | ) |
| BARBECUE, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

**PARTIES TO THIS COMPLAINT**

**A. The Plaintiff**

1. The Plaintiff, ARMEND TRNAVA, is a 37 year old male who resides in Chicago, Illinois.

2. The plaintiff, an immigrant, was born and raised in the eastern European country of Kosovo.[1]

3. Mr. Trnava speaks and writes five different languages fluently. Although he is fluent in English, his English pronunciation, writing skills, grammar and spelling are at not perfected, and he speaks with a heavy eastern European accent.[2]

4. The plaintiff was employed by the Defendant's company for nearly eight months, beginning in March of 2018 through October 2018 (although he had previously been employed once before by Defendants). The Defendants, along with their shareholders, own and operate high-end restaurants in Chicago, Illinois, most notably, its steakhouse, ("Chicago Cut"), and previously, its barbeque restaurant, ("Southern Cut").

5. The Plaintiff was employed as a "front of house" restaurant manager (who manages the service staff) for a period of almost eight months by the Defendants beginning in March of 2018 and was terminated in October of 2018. Attached hereto as Ex. A is a true and accurate copy of the employment agreement between the Plaintiff and Defendant.

B. **The Defendants**[3]

---

[1] 2019 Report on International Religious Freedom: Kosovo. Office of International Religious Freedom, U.S. Department of State. Kosovo - United States Department of State, https://www.state.gov/reports/2019-report-on-international-religious-freedom/kosovo/ (accessed May 24, 2021).

[2] For the purposes of a jury trial, the plaintiff respectfully requests that this Honorable Court admonish the plaintiff as to his request and desire for an interpreter for his trial proceedings.

[3] The Illinois Whistleblower Statute includes the term "employer" to include "any authority including a department, division, bureau, board, commission, or other agency of these entities; and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees." 740 ILCS 174/5.

6. The Defendant, CHICAGO CUT STEAKHOUSE, LLC, is an Illinois Limited Liability Company based out of Chicago, Illinois. It operates as high-end restaurant (steakhouse) in Chicago and has more than 15 employees.

7. The Defendants' restaurant, CHICAGO CUT, employs over 200 staff members, and grosses over $15 million per year. [4]

8. The restaurants are divided into the dining room and kitchen operations. Restaurant managers are responsible for the front of the house, supervising servers, bussers, hosts and bartenders, and for interacting with guests to ensure a superb dining experience. Success in the restaurant industry is based, in part, in maintaining good relationships with guests to obtain repeat business and for guests to make positive recommendations to others. They are both managed by the Chief Operating Officers of Chicago Cut Steakhouse and Southern Cut Barbecue, Matthew Moore and David Flom.

9. The defendant hired the plaintiff to manage the front of house staff for the DEFENDANTS' barbecue restaurant, known as "SOUTHERN CUT" on or about December of 2017. The Plaintiff began actually working for defendants, but assigned to the defendant's other restaurant, a high-end steakhouse known as "CHICAGO CUT" on or about March, 2018. the plaintiff remained there until October of 2018 as a manager of the restaurant. Although he was hired as general manager of SOUTHERN CUT, he ended up instead being one of the general managers for the Defendant" CHICAGO CUT STEAKHOUSE.

---

[4] See Chicago Has 18 of the Top 100 Highest-Grossing Restaurants in the U.S. - Eater Chicago, (Oct. 28, 2020)

11. Defendant THE LOCAL, LLC is an Illinois limited liability company doing business as SOUTHERN CUT BARBECUE, a restaurant located in Chicago, Illinois. The plaintiff was initially hired by SOUTHERN CUT BARBECUE on or about March 9, 2021 as general manager. However, he began training at CHICAGO CUT STEAKHOUSE with a promise to be transferred to Defendants' sister restaurant, SOUTHERN CUT BARBECUE as the general manager. He was not transferred until approximately 2-3 months, and then transferred once again back to CHICAGO CUT STEAKHOUSE. The plaintiff experienced discrimination and disparate and harassing treatment while working at both the restaurants from March 2018 to October 19, 2018 when he was terminated by the Defendants.

12.

## JURISDICTION

13. This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000-e *et seq* for discrimination based on national origin and religion.

14. Jurisdiction is based on Federal question pursuant to 28 U.S.C. § 1331, and relevant State of Illinois statutes under 28 U.S.C. § 1367.

15. Venue is proper pursuant to 28 U.S.C. § 1391(B), as at all times herein both the Plaintiff and Defendants reside or resided in this district and that all events given rise to Plaintiff's claim herein occurred within this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16. The plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (hereinafter "EEOC"), regarding the defendant's alleged discriminatory conduct on February 17, 2019, Charge No. 440-2019-02760.

17. On November 11, 2019 the plaintiff received a dismissal and Right to Sue notice from the EEOC given 90 days to file a lawsuit with this Court. The effect was that of a non-decision as to the allegations of facts, circumstances, law or remedy for either party. See Ex. A.

18. Plaintiff has exhausted all administrative remedies.

19. Additionally, on April 20, 2021, after numerous FOIA request and subpoena, Plaintiff's counsel received the entire EEOC file for this matter.

**FACTUAL ALLEGATIONS**

20. Plaintiff, Armend Trnava, is an Islamic Muslim with national origin from that of the Eastern European country of Kosovo.

21. His is an experienced professional in the restaurant industry, both in the United States as well as in Europe.

22. Mr. Trnava became a U.S. citizen in 2018, during the period in which he was employed by the defendant company.

23. On or about March 9, 2018, the Plaintiff was offered the position of General Manager of the Chicago Cut Steakhouse, located in Chicago, Illinois by Its managing partners, DAVID FLOM, (Male, White, U.S. citizen), and MATTHEW MOORE (Male, white, Ireland). FLOM and MOORE run the day-to-day operations of the restaurant, including hiring, firing and supervising managers. He was given a formal offer in writing for the position with a starting salary of $70,000, plus bonuses per year.

24. The position was also contingent upon his demonstrating his standing as a non-citizen to work. At that time, he had a permanent green card, and his application for U.S. citizenship was pending before the United States Citizenship and Immigration Services.

25. As part of the offer, the defendants informed Mr. Trnava that he would begin his employment at its sister restaurant, Chicago Cut Steakhouse, also located in Chicago, Illinois, for approximately 2-3weeks and then be transferred to Chicago Cut Steakhouse. Trnava accepted the offer for the position an began employment as front of house manager with Chicago Cut Steakhouse on or about March 9, 2018.

26. Despite the terms of the offer of employment, Mr. Trnava was only paid $60,000.00 per year, $10,000.00 less than the agreed upon salary. He also was delegated to remain at Chicago Cut Steakhouse for 2-3 months, rather than the 2-3 weeks as promised, and then was transferred back to Chicago Cut Steakhouse for the remainder of the time in which he was employed.

27. As of the first week of his employment, a group of employees ganged up on Mr. Trnava, calling him racial slurs, making jokes about his national origin. He endured numerous acts of sexual and national based harassment, as evidenced in his Charge of Discrimination to the EEOC.

28. That on numerous occasions thereafter, the staff members of both Chicago Cut Steakhouse and Southern Cut Barbecue, who were subordinates to the Plaintiff in which the Plaintiff was employed to manage, continuously carried out with discriminatory and harassing conduct, primarily based on the plaintiff's national origin, that being from Kosovo. They would constantly call him names, and say things to him like, "stinky European," and

"Eastern Europeans have small penises," and make fun of his accent, his immigration status, and make other derogatory sexual comments and gestures about him based on his national origin. They would also laugh at him about his accent, his being a Muslim, and became completely insubordinate to his orders as manager.

29. The comments and gestures were unwelcomed and humiliating to the Plaintiff. When the plaintiff would address the issue with the staff members and ask them to stop, he would be even more humiliated, as they would laugh at him and make the conduct worse. The unwelcomed comments and gestures were not just an infrequent utterances or epithets. The conduct was so frequent that it would occur on a daily basis, and humiliated the Plaintiff, as the Plaintiff was trying to run the front of the house of the restaurant as its general manager. As a result, the staff he was managing would not take him seriously or follow his commands, and there were incidences in which the staff would say these comments to him in front of guests of the restaurant. The staff continued to constantly undermine the plaintiff, thereby interfering with ability to perform his job as manager of the restaurants productively and made the environment unbearable for the Plaintiff, causing extreme distress for the Plaintiff.

30. The unwelcome comments and gestures were not just an infrequent utterances or epithets. It was humiliating, as the Plaintiff was trying to run the front of the house of the restaurant and the staff no longer took him serious. The staff continued to undermine the Plaintiff and constantly insulted, disrespected and undermined him, creating a hostile work environment based on the Plaintiff's national origin. The illegal conduct of both the staff and the upper management interfered with ability of the Plaintiff to perform his job as

manager productively. As a result, the staff he was managing would not take him seriously or follow his commands, and there were incidences in which the staff would say these comments to him in front of guests of the restaurant. The staff continued to constantly undermine the plaintiff, thereby interfering with ability to perform his job as manager of the restaurants productively and made the environment unbearable for the Plaintiff, causing extreme distress for the Plaintiff.

31. The Plaintiff made numerous reports and complaints, both verbally and in writing, to the restaurants' managing partners, David Flom and Matthew Moore, regarding harassing and discriminatory conduct, insubordination, intimidation, and directed vulgar acts towards him by members of the staff. The managing partners refused to address the behaviors and made no attempts to remedy the situation. Therefore, the discrimination and harassment continued on a near daily basis from March 2018 to September 14, 2018 when he was terminated.

32. Not only did the employees harass and discriminate against the Plaintiff based on his national origin, but the managing partners also acted with blatant intentional discrimination and hostile conduct towards the Plaintiff. They too would make fun of his national origin and use derogatory and abusive language toward him that they did not use towards those who were from the United States. For example, on August 14, 2021, the Plaintiff was to be sworn in as U.S. citizen. Prior to that date, The Plaintiff informed Mr. Moore that he may be late to work on August 14, 2021 due to the swearing in ceremony. Mr. Moore replied to him, simply, "Fuck you."

33. The managing partners, on information and belief, had knowledge and belief of the illegal discrimination and harassment endured by the plaintiff, intentionally and blatantly disregarded addressing the staff or to make any remedy the issue despite the numerous complaints the plaintiff made to them. Further, instead of remedying or addressing the situation, the managing partners, took on an active role of creating a false, non-discriminatory reasons to have Mr. Trnava terminated. On information and belief, the managing partners forced at least one other manager to write up a fake misconduct reports of that of Mr. Trnava, with all knowledge that it was false.

34. On information and belief, the defendants, knowing of the illegality of their conduct and the conduct of its employees, created pretextual allegations of wrongful conduct by the plaintiff with intention of creating false complaints of unprofessionalism. The purpose of which was to create a non-discriminatory reason for his termination.

35. The constant and continuous behaviors created a very hostile work environment for Mr. Trnava. Even when he complained to the managing partners, they too would make fun of him and use derogatory and abusive language towards him.

36. The conduct became so unfathomable and pervasive to the point that on information and belief, the managing partners would ask for other managers, such as Robert McGuire, to support false accusations of misconduct. They would falsify complaints from customers about the Plaintiff's conduct, so that Mr. Trnava would be reprimanded. This happened on at least two known occasions. He was suspended as a result in August of 2018, and in October of 2018, for a false complaints against him, and again in October of 2018, leading to him termination from the restaurant on October 19, 2018.

37. The managing partners were intentionally and blatantly disregarding the Plaintiff's complaints of the harassing conduct and verbal assaults of the staff. The managing partners made no attempts to address the staff, nor to make any attempt to remedy the issue despite the numerous complaints the plaintiff made to them. On information and belief, the managing partners encouraged this behavior in hopes that the plaintiff would resign.

38. The acts were so frequent as to create a hostile work environment. for Mr. Trnava, and ultimately his being terminated from his employment of his being born and raised in Kosovo, was the cause of his wrongful and retaliatory discharge.

39. That as a result of his discharge, he suffered an adverse employment action of termination from that of other similarly situated employees.

40. The creation, sponsoring and targeting the Plaintiff with wrongful conduct towards patrons and co-workers, including targeting the Plaintiff by falsely accusing him of improper conduct toward patrons and coworking including. On information and belief, the "customer" who complained about the plaintiff, were actually friends with the managing partners friends and asked to write up a complaint about the plaintiff. Thus said email, holds the Plaintiff guilty of wrongful conduct toward a wife or child of the customer, but in actuality, the situation never occurred and on information and belief was set up beforehand between the customer and the individual manager.

41. Another incident was on the day before the Plaintiff was scheduled to appear in this Court house the next morning for him to be sworn in by a member of this Court as an American citizen. Plaintiff informed one of the owner managers that he would probably be

late for work and asked if it would be ok, since he was to be sworn in as a citizen. The response to him from Mr. Moore without hesitation was "Fuck You."

42. That all times herein, Defendants had knowledge of the surrounding circumstances and conditions, and that its conduct would naturally and probably result in injury.

43. That at all times herein, the conduct of the Defendants and their actions and deliberate inactions in not addressing the reports of national origin harassment by the staf towards the plaintiff, were intentional, made with reckless disregard, with willful and wanton conduct. The conduct of the Defendants proximately caused injury to the Plaintiff.

44. That as a result of the hostile work environment, the Plaintiff suffered damages.

45. That the Plaintiff suffered from disparate treatment and suffered an adverse employment action, that of being terminated, based on his national origin.

## CAUSES OF ACTION

## COUNT 1-VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

46. Plaintiff realleges paragraphs 1-45 as fully pleaded herein.

47. Plaintiff is in a protected class as he is genetically a part of an ethnically and native country of origin of a distinctive group, that being from the country of Kosovo.

48. The plaintiff was denied an equal employment opportunity because of his ancestor's, place of origin; and because he has the physical, cultural, or characteristics of a Kosovo national origin group.

49. The plaintiff was denied equal opportunity because of his religious practices and Islamic beliefs, and the extreme prejudice of its owners, managers, and employees.

50. Defendant is a covered employer under 42 U.S.C. § 2000e(b) as it is a limited liability company is a "person" under the Act, as Chicago Cut Steakhouse, LLC is an employer of at least 15 people for employees for each working day for 20 or more calendar weeks in the current or preceding calendar year.

51. The inappropriate and unwelcome comments and gestures and insubordination toward the plaintiff relating to his sex and Kosovo national origin created a hostile work environment by which the terms and conditions of employment different for members of a protected class and similarly situated member who were not members of a protected class. Defendant's failure to correct the behavior of their staff amounted to a condonation, ratification, approval, and perpetuation of the hostile work environment.

52. As a result of the continuous intentional harassment based of national origin received by the plaintiff, and the defendant's refusal to take any action to prevent or control it, was so severe and pervasive as to alter the conditions of his employment and create an abusive working environment.

53. By creating, condoning, a perpetuating a hostile work environment based on Mr. Trnava's national origin, Defendant has intentionally and with reckless indifferences and disregard violated Title VII of the Civil Rights Act of 1991.

54. Defendant's condonation, ratification, approval and perpetuation of the hostile work environment caused the plaintiff to suffer humiliation, embarrassment, degradation, and emotional distress.

55. As a result of the intentional acts complained of herein, Plaintiff has suffered and will continue to suffer the loss of employment with Defendant and the loss of salary, benefits, and other compensation which such employment entails, and Plaintiff has also suffered pecuniary losses, emotional distress, pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

56. Following the time that Plaintiff openly and in writing, complained of being discriminated against on the basis of national origin and religion and subject to sexual harassment, Defendant terminated the plaintiff's employment on October 19, 2018.

57. By retaliating against Plaintiff, Defendant has intentionally and with reckless indifference and disregard violated Title VII of the Civil Rights Act of 1991.

58. As a direct and proximate result of the wrongful conduct of the defendant, the plaintiff has suffered loss of income, severe humiliation, embarrassment, degradation, emotional distress and mental anguish, attorneys fees, loss of enjoyment of life, pain, suffering and injury to his professional reputation, as well as other non-pecuniary damages.

**COUNT II-HOSTILE WORK ENVIORMENT-NATIONAL ORIGIN BASED DISCRIMINATION**

59. Plaintiff realleges and repleads Paragraphs 1-58 as though fully set forth herein.

60. The inappropriate and unwelcome comments and gestures toward the plaintiff relating to his national origin, created a hostile work environment by which the terms and conditions of employment different for members of a protected class and similarly situated members who were not of a protected class. Defendant's failure to correct the discriminatory and harassing behavior amounted to a condonation, ratification, approval, and perpetuation of the hostile work environment.

61. By creating, condoning, a perpetuating a hostile work environment based on Mr. Trnava's national origin, Defendant has intentionally and with reckless indifferences and disregard violated Title VII of the Civil Rights Act of 1991 and the State of Illinois Whistleblower Statute.

62. Defendant's condonation, ratification, approval and perpetuation of the hostile work environment caused the plaintiff to suffer humiliation, embarrassment, degradation, and emotional distress.

63. As a result of the intentional acts complained of herein, Plaintiff has suffered and will continue to suffer the loss of employment with Defendant and the loss of salary, benefits, and other compensation which such employment entails, and Plaintiff has also suffered pecuniary losses, emotional distress, pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**COUNT V- INTENTIONAL BREACH OF CONTRACT**

64. Plaintiff repleads paragraphs 1-79 as though fully pleaded herein.

65. On December 14, 2017, the defendant and the plaintiff entered into an employment contract with a meeting of the minds, as to the plaintiff's employment, setting forth duties, location, and salary with the defendant.

.66. The Defendant intentionally violated the agreed terms of the contract by paying the plaintiff less than the written, agreed amount.

67. As a proximate result of the defendants' actions, the plaintiff suffered monetary damages including income and employee benefits. See Exhibit 6.

**WHEREFORE**, the plaintiff respectfully request judgment against the defendant for compensatory damages, future and past pain and suffering, loss of enjoyment of life, the differences in amount of the breach of contract, punitive damages, attorneys fees and costs and any other remedy this Court feels is fair and just.

a. Enter a declaratory judgment that the practices of herein are unlawful and violative of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

b. Permanently enjoin Defendant, its agents, successors, officers, employees, attorneys and those acting in concert with it from engaging in each of the unlawful practices, policies, customs and usages set forth herein, and from continuing any and all practices shown to be in violation of applicable law;

c. Compensate and make Plaintiff whole for all earnings wages, including prejudgment interest and other benefits that he would have received but for the national—origin based hostile practices of the Defendant;

d. Award Plaintiff the costs and disbursements of this action, including reasonable attorney's fees;

e. Award Plaintiff punitive damages for Defendant's willful conduct; and

f. Grant any other relief as may be just and proper

PLAINTIFF DEMANDS A TRIAL BY JURY

                                                                           Respectfully Submitted

                                                                           /s/ Robert A. Holstein
                                                                           _____

Robert A. Holstein                                                                 Attorney for Plaintiff
Holstein & Muth, LLC

130 N. Garland Court, Suite 1906
Chicago. Illinois 60602
Allison.muth.law@gmail.com
(708) 205-1869
ARDC No: 1600125